MATTHEW RIGHETTI, ESQ., SBN 121012
JOHN GLUGOSKI, ESQ., SBN191551
RIGHETTI GLUGOSKI, PC
456 Montgomery St., Suite 1400
San Francisco, CA  94101
Telephone: (415) 983-0900
Facsimile:  (415) 397-9005

REUBEN D. NATHAN, ESQ. SBN 208436
NATHAN & ASSOCIATES, APC
600 W Broadway Suite 700
San Diego, CA 92101-3370
Telephone: (619) 272-7014
Facsimile: (619) 330-1819

ROSS CORNELL, ESQ., SBN 210413
111 W. Ocean Blvd., Suite 400
Long Beach, CA  90802
Telephone:  (562) 612-1708
Facsimile: (562) 394-9556

DAVID BORGEN, ESQ., SBN 99354
JAMES KAN, ESQ., SBN 240749
GOLDSTEIN BORGEN DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612-3536
Telephone: (510) 763-9800
Facsimile: (510) 835-1417

MICHAEL MALK, ESQ., SBN 222366
MALK LAW FIRM
1180 S. Beverly Dr., Suite 302
Los Angeles, CA  90035
Telephone: (310) 203-0016
Facsimile:  (310) 499-5210

Attorneys for Plaintiffs and the Proposed Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM SHAW, PETER GOLIGHTLY, JUSTIN TURNER and JOSHUA STANSFIELD as individuals and on behalf of all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>WIZARDS OF THE COAST, LLC,<br><br>Defendant. | Case No.:  5:16-cv-01924<br>Hon. Edward J. Davila<br><br>**COLLECTIVE AND CLASS ACTION**<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(b); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  November 9, 2017<br>Time: 9:00 a.m.<br>Courtroom: 4 |

1

**Table of Contents**

I. INTRODUCTION ………………………………………………………………………....2

II. THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS
 PURSUANT TO THE LENIENT FIRST STEP STANDARD OF REVIEW ……………...2

III. PLAINTIFFS' CLAIMS CAN BE COLLECTIVELY LITIGATED ………………………..3

    A. Plaintiffs and Collective Members are Similarly Situated …………………………..3

    B. Contrary to Defendant's Claim, Plaintiffs Have Satisfied the
 Evidentiary Standard…………………………………………………………….....7

    C. Despite Defendant's Attempts to Mislead the Court, Plaintiff's Testimony
 Supports, Rather than Contradicts, Their Claims ……………….……………………7

    D. Justin Turner's Testimony Undermines Wizards' Testimony ……………………….10

IV. THE COURS SHOULD DISREGARD ATTEMPTS TO DELVE
 INTO THE MERITS ...............................................................................................................12

    A. Courts in this District Do Not Consider Defendant's Evidence at this Stage ……….12

V. PLAINTIFFS' NOTICE TO COLLECTIVE MEMBERS IS NECESSARY AND
 COMPLIES WITH THE LAW ……………………………………………………………12

VI. DEFENDANT'S OBJECTIONS TO EVIDENCE ………………………………………..13

VII. CONCLUSION……………………………………………………………………………15

**Table of Authorities**

**STATUTES**

29 U.S.C. §§ 202(a), 203(d), 206, 207 and 216(b)……………………………………………..*passim*

**CASES**

*Adams v. Inter-Con Sec. Sys. Inc.*,
 242 F.R.D. 530 (N.D. Cal. 2007)………………………..…………………………………2

*Aguayo v. Oldenkamp Trucking*,
 2005 WL 2436477 (E.D.Cal. Oct. 3, 2005) ……………………..………………………14

*Barron v. Henry Cnty. Sch. Sys.*,
 242 F.Supp.2d 1096, 1098 (M.D. Ala. 2003) ……………………………………………...13, 14

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
 2008 WL 793838, at *2 (N.D. Cal. Mar. 24, 2008) …………………………….…..……..3

*Bonnette v. Cal. Health and Welfare Agency*,
 704 F.2d 1465 (9th Cir. 1983) ……………………………………………………....…….7

*Boucher v. Shaw*,
 572 F.3d 1087, 1090-91 (9th Cir. 2009) …………………………………………..…...…..6

*Brewer v. Gen. Nutrition Corp.*,
 2013 WL 100195, at *3 (N.D. Cal. Jan. 7, 2013) ……………………………….…*passim*

*Carrillo v. Schneider Logistics, Inc.*,
 2012 WL 556309, at *15 (C.D.Cal., Jan.31, 2012) ………………………………..……..6, 13

*Chao v. A-One Medical Services, Inc.*
 346 F. 3d 908 (2003) …………………………………………………………………...5, 6, 7

*Colson v. Avnet, Inc.*,
 687 F.Supp.2d 914, 925-26 (D. Ariz. 2010) …………………………………………….....3, 12

*Davis v. Soc. Serv. Coordinators, Inc.*,
 No. 1:10-CV-02372, 2012 WL 5838825 (E.D. Cal. Nov. 15, 2012) …………….…………14

*Escobar v. Whiteside Constr. Corp.*,
 2008 WL 3915715, at *5 (N.D. Cal. Aug. 21, 2008) ……………………………………..12

*Garcia v. San Antonio Metro. Transit Auth.*,
 469 U.S. 528 (1985) ……………………………………………………………………….7

*Harris v. Vector Mktg. Corp.*,
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ……………………………………………………………7

*Hill v. RL Carriers, Inc.*,
    690 F.Supp.2d 1001, 1010 (N.D. Cal. 2010) ……………………………………………………12

*Hoffman-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989) …………………………………………………………………………2

*Kress v. PricewaterhouseCoopers, LLP*,
    263 F.R.D. 623, 628 (E.D. Cal. 2009) ……………………………………………………2, 12

*Lewis v. Wells Fargo & Co.*,
    669 F. Supp. 2d 1124 (N.D. Cal. 2009) …………………………………………………....12, 13

*Lindow v. U.S.*,
    738 F.2d 1057, 1059 (9th Cir. 1984) …………………………………………………………...3

*Litty v. Merrill Lynch & Co.*,
    No. CV 14-0425 PA (PJWx), at fn. 1 (C.D. Cal. Aug. 4, 2014) ………………………………14

*Leuthold v. Destination Am., Inc.*,
    224 F.R.D. 462 (N.D. Cal. 2004) ………………………………………………………………...14

*Lou v. Ma Labs., Inc.*,
    2014 WL 68605 (N.D. Cal. Jan. 8, 2014) ………………………………………………………3

*Luque v. AT&T Corp.*,
    2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2010) …………………………………………...7

*Martinez v. Combs*,
    49 Cal.4th 35 (2010) ……………………………………………………………………...…7

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992) …………………………………………………………………………….6

*Newton v. Schwarzenegger*,
    2010 WL 2280532, at *4 (N.D. Cal. June 7, 2010) ……………………………………………14

*Pirrone v. North Hotel Assoc.*,
    108 F.R.D. 78, 82 (E.D. Pa. 1985) ……………………………………………………………..2

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F.Supp.2d 1197, 1203 (N.D. Cal. 2013) …………………………………………….3, 7, 12

*Ribot v. Farmers Ins. Grp.*,
    2013 WL 3778784, at *17 (C.D. Cal. July 17, 2013) …………………………………………14

*Sanchez v. Sephora USA, Inc.*,
    2012 WL 2945753 (N.D.Cal.2012) ……………………………………………………………13

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264, 266 (D. Minn. 1991) …………………………………………………………..2

*Shaffer v. Farm Fresh, Inc.*,
    966 F.2d 142, 147 n. 5 (4th Cir. 1992) ………………………………………………………….2

*Stitt v. San Francisco Mun. Transp. Agency*,
    2014 WL 1760623 (N.D. Cal. May 2, 2014) …………………………………………………..3, 13

*Torres Lopez v. May*,
    111 F.3d 633 (9th Cir. 1997) ……………………………………………………………………7

*Trinh v. JP Morgan Chase & Co.*,
    2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) …………………………………………………….5

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036, 1047 (2016) ……………………………………………………………………10

*United States v. Rosenwasser*,
    323 U.S. 360, 363 n.3 (1945) …………………………………………………………………..6

*Walling v. Portland Terminal Co.*,
    330 U.S. 148, 152 (1947) ……………………………………………………………………….6

*Wilks v. Pep Boys*,
    2006 WL 2821700, at *4 (M.D. Tenn. Sept. 26, 2006) ………………………………………...5

*Williams v. Accredited Home Lenders, Inc.*,
    2006 WL 2085312 (N.D. Ga. July 25, 2006) …………………………………………………...5

*Wynn v. Nat'l Broad. Co., Inc.*,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) …………………………………………………………2

*Zaborowski v. MHN Gov't Servs.*,
    No. C 12-05109, 2013 WL 1787154 (2013) ……………………………………………………3

## I. INTRODUCTION

In collective actions under the FLSA, named plaintiffs are entitled to discover the identity of all "similarly situated" individuals and to have notice sent to those potential plaintiffs informing them of the pendency of the lawsuit and their right to opt in. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 172-74 (1989).[1] The Supreme Court established this procedure to help vindicate the statutory rights protected by the FLSA. The "FLSA was enacted to protect employees . . . . [C]lass action procedure would have . . . no significance if notice was not permitted in some form." *Pirrone v. North Hotel Assoc.*, 108 F.R.D. 78, 82 (E.D. Pa. 1985). Notice "need not await a final determination that the 'similarly situated' requirement is satisfied." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991). Nor does issuance of notice require adjudication of the merits of plaintiffs' claims. The requirements for finding that others are similarly situated are far less stringent than requirements for certifying a class action under Federal Rule of Civil Procedure 23. *Brewer v. Gen. Nutrition Corp.*, 2013 WL 100195, at *3 (N.D. Cal. Jan. 7, 2013). "[The] determination is made based on a fairly lenient standard, and typically results in a 'conditional certification' of a representative class. *Wynn v. NBC,* 234 F.Supp.2d 1067, 1082 (C.D.Cal.2002)." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009)

The central failing of Defendant's opposition, as explained herein, is that it spends considerable effort seeking to distract from a key common fact which appears to be undisputed, *to wit*: Defendant does not classify any member of the Collective as an employee. Defendant quibbles with whether its judges are volunteers or independent contractors, but Defendant ignores entirely the fundamental question in this case: Are Magic judges <u>employees</u>?

## II. THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS PURSUANT TO THE LENIENT FIRST STEP STANDARD OF REVIEW.

The Ninth Circuit has adopted the two-step analysis for evaluating collective actions under the FLSA. *Adams v. Inter-Con Sec. Sys. Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007). The overwhelming

---

[1] *Hoffman-La Roche* was brought under the Age Discrimination in Employment Act ("ADEA"). The ADEA expressly incorporates the enforcement provisions of the FLSA, so courts may look to cases brought under either statute with respect to the proper interpretation of Section 216. *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 n. 5 (4th Cir. 1992).

majority of courts have held that the stage one standard applies until *the close of discovery* and the case is *ready for trial*, at which point the defendant may make a motion to decertify. *Id.* Courts in this district leniently review and grant Section 216(b) Motions. *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1203 (N.D. Cal. 2013). The more lenient standard used at the first step is buttressed by sound policy because: (1) collective members must affirmatively "opt in" to the case, *Brewer*, 2013 WL 100195, at *3, and (2) there is a limited amount of discovery and available evidence at the first stage. *Adams*, 242 F.R.D. at 536. Analysis under the first step is extremely lenient and typically results in certification. *Id.* "At the first stage, the district court approves conditional certification upon a minimal showing that the members of the proposed class are "similarly situated." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2008 WL 793838, at *2 (N.D. Cal. Mar. 24, 2008).[2] Situations where courts applied a heightened standard of review are distinguishable because they involved late-stage dispositive, post-discovery motions.[3] Importantly, the cases that Defendant cites which share the same posture as this case all apply the lenient standard of review.[4] Thus, the Court should apply the lenient first stage analysis.

### III. PLAINTIFFS' CLAIMS CAN BE COLLECTIVELY LITIGATED.

#### A. Plaintiffs and Collective Members are Similarly Situated.

Plaintiffs and the proposed Collective members ("PCMs") are similarly situated for the purposes of facilitating notice. 29 U.S.C. § 216(b). Plaintiffs present "substantial allegations that Magic judges are subject to a single illegal policy, plan or decision." *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1787154, at *2 (N.D. Cal. Apr. 25, 2013). Defendant's claim that Plaintiffs have neither argued, nor set forth evidence of, any nationwide policy is disingenuous, as delineated in Plaintiffs' Section 216(b) Motion:

> "Despite the long-standing requirement that employees must be paid for all hours worked under the FLSA, Wizards has a uniform policy of refusing to pay employee wages to Judges for all the hours they work related to Wizards sanctioned events" … "Magic

---

[2] It is not until the second stage, usually initiated by a motion to decertify, that the court engages in a more searching review. *Brewer*, 2013 WL 100195, at *3.

[3] *See Lindow v. U.S.*, 738 F.2d 1057, 1059 (9th Cir. 1984); *Lou v. Ma Labs., Inc.*, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014); *Stitt v. San Francisco Mun. Transp. Agency*, 2014 WL 1760623 (N.D. Cal. May 2, 2014); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F.Supp.2d 1111 (N.D. Cal. 2011).

[4] *See Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 925-26 (D. Ariz. 2010) ("Plaintiffs' burden is light . . . . motions to conditionally certify a class for notification purposes are 'typically' granted. . . .").

> Judges are and have been subject to the same Wizards compensation policies and practices whereby they are not paid minimum wages or overtime wages for all of the work they perform on behalf of Wizards" ... "Wizards and its agents also uniformly failed to reimburse Judges for all work-related expenses, such as food, travel, or hotel accommodations, incurred while working as a Judge" … "Magic judges rely on Wizards' product giveaways as their sole form of expense reimbursement" …"Thus, Plaintiffs and the putative opt-ins raise common allegations that these compensation and reimbursement policies violate the FLSA, especially since for-profit private sector employers, like Wizards, may not accept volunteer services from employees." [Dkt. No. 46, Motion, 13:12 – 14:28].

Plaintiffs allegations are not only set forth in the operative Complaint, but also bolstered in detailed evidence – much of which is ignored by Defendant – submitted in support of their Motion.   As Wizards concedes on its own website, the life of a judge means "getting into an interesting activity that's both fun and a lot of work." Dkt. No. 46-7, Cornell Decl. Ex. C [PLF1025].  Wizards further admits that being a Judge "demands dedication, commitment, and constantly keeping up with the new things that come with the evolution of the game," "demands a professional attitude," and is "a matter of responsibility." *Id.* [PLF1022].  That Wizards relates to Magic judges as a labor source is underscored by Wizards' own description of the kinds of things it expects Magic judges to do:

> "**At all levels**, judges will keep the game fair, answer rules questions from players at the tournament, correct infractions and apply penalties when necessary. Basically, this will represent most of the judging job, especially at small, local tournaments, where, usually, there is only one judge. Aside from rules matters and players disputes, judges perform some activities related to the tournament organization. Judges post pairings generated by the scorekeeper, check decks and deck lists, keep the tables organized and clearly numbered. They also lend a hand to the [Tournament Organizer] when necessary: making announcements, looking for missing players and finding unreported match results. After all, besides keeping it fair, we need to keep it organized." (emphasis added) *Id.* [PLF1023]

Wizards analogizes Magic judges to sports referees: "[b]asically, the judge at a tournament is the person responsible for keeping the game fair (much like the referee in any other sport), applying the rules, correcting and penalizing any infractions, answering questions and assisting players in tournament matters."  *Id*. [PLF1021].  Wizards goes on to instruct Magic judges on its website, "[w]ork at as many events as you possibly can. Work at all RELs. Work in any capacity you can. Believe it or not, your experience picking up trash can be just as valuable as scorekeeping."  Shaw Supplemental Declaration in Support of Plaintiff's Motion for Conditional Certification and to Facilitate Notice Under 29 U.S.C. § 216(b) ("Shaw Supp. Decl.") ¶ 12, Ex. F.  The evidence in support of Plaintiffs' motion is replete with Wizards' "marching orders" to Magic judges:  **work, work, work**.  Nothing presented in Wizards'

4

opposition refutes the fundamental reality of the relationship between Wizards and Magic judges, and Wizards' merits based claim that Magic judges are either "independent contractors" or "employees of the Tournament Organizers" misses the mark.[5] The evidence presented in Plaintiffs' motion paints a picture of the substantial control Wizards exerts over judging "**at all levels**."

These allegations and evidence satisfy the lenient "similarly situated" standard. *Adams*, 242 F.R.D. at 534-36. This conclusion follows from numerous decisions that have conditionally certified cases involving FLSA claims like those here supported with similar evidence – as cited in Plaintiffs' Motion. Moreover, proceeding as a collective action is particularly appropriate in cases involving nationwide collectives where the defendant's wage and hour practices are dictated at a national level. *Wilks v. Pep Boys*, 2006 WL 2821700, at *4 (M.D. Tenn. Sept. 26, 2006).[6] This is precisely the situation here – Defendant even admits its nationwide policies apply to the entire class without differentiation. Because all Tournament Organizers nationwide are obligated to comply with Wizards policies as set forth in the Wizards' WPN terms and conditions, including Wizards' effort to delegate its employer obligations contractually to those Tournament Organizers, Wizards policies must apply evenly across the United States to all events staffed by Magic judges and hosted by Tournament Organizers. Opposition p. 6:7-19.

Wizards goes to great lengths to argue its position that "[t]he significant majority of *Magic* events in the United States are run by local game stores or independent TO's without any direct oversight by, or involvement from, Wizards." Opposition, p. 1:18-19. The foregoing statement is both misleading and inaccurate. Evidence presented in support of Plaintiff's motion, including documents collected from Wizards' website (evidence which is not contested by Wizards), show the level of control exercised by Wizards over the process of becoming a judge, the mechanics of *Magic* events, the prize-support disseminated by Wizards (regularly used by Tournament Organizers to keep the judges engaged), the technical details of how *Magic* events are scheduled, marketed and reported to Wizards, the kinds of

---

[5] Defendant alludes to the idea that Tournament Organizers are the "true" employers. Opposition, p. 1:18-25. Whether or not Tournament Organizers may also meet the standard of an employer is beyond the point. Wizards analysis ignores the *joint employer* doctrine; a doctrine strongly supported by the Ninth Circuit in *Chao v. A-One Medical Services, Inc.* (2003) 346 F. 3d 908.

[6] The cases cited by Defendant where conditional certification was denied are distinguishable focusing on exempt classification status, which requires an additional factual showing. *See Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008); *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312 (N.D. Ga. July 25, 2006). Exemption status is not an issue in this case.

"off-the-clock" summaries, reports and articles judges are required to submit, and the kinds of uniforms judges are expected to wear, among many other conditions of employment. These are matters over which the Tournament Organizer has little or no substantive control. Whether Wizards' control is "direct" or "indirect" is immaterial insofar as both "direct" and "indirect" control over the conditions of employment yield the same result for Wizards – it is, at a minimum, the joint employer of *Magic* judges. *Chao v. A-One Medical Services, Inc.* (2003) 346 F. 3d 908.[7]

Congress broadly defined "employer" in the FLSA to include "any person acting *directly* or *indirectly* in the interest of an employer in relation to an employee." 29 U.S.C. §203(d) (emphasis added). Congress further defined "employ" to "include to suffer or *permit* to work." Id. §203(g) (emphasis added). These definitions extend the FLSA's scope far beyond the common law master-servant/agency standard, which narrowly focused on when employers should be tortiously liable for the conduct of others rather than on how best to ensure the protection of workers' fundamental statutory rights. See *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). The FLSA's definition of employer is "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting S. Rpt. No. 884, 81 Cong. Rec. 7657 (1937). "A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame." *Id*. at 632; accord, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009) ("employer" "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes").

Other facts also support this conclusion, including the following: the existence of contractual arrangements between Wizards and the Tournament Organizers (T.O.'s), the arrangement between Wizards and T.O.'s to share workers, the fact that T.O.'s and Wizards are each acting directly in the

---

[7] Also see, *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003); nurses placed at a hospital by staffing agencies, *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 143-49 (2d Cir. 2008); or warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility; *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014); *A-One Med. Servs*., 346 F.3d at 917; *Lantern Light*, 2015 WL 3451268, at *3 (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers); *Berrocal v. Moody Petrol., Inc.*, 2010 WL 1372410, at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor").

interest of the other (i.e. stimulating the sale of Magic cards), the judges being under the control of Wizards' policies when working at a Magic event hosted by a T.O. (i.e. following policies, reporting in the Wizards system), and the fact that Wizards maintained the power and authority to unilaterally fire or "suspend" judges, all of which tend to prove the existence of a joint employment relationship.[8]  *Chao v. A-One Medical Services, Inc.* (2003) 346 F. 3d 908; *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), disapproved on other grounds by *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *Torres Lopez v. May*, 111 F.3d 633 (9th Cir. 1997); *Martinez v. Combs*, 49 Cal.4th 35 (2010).

### B. Contrary to Defendant's Claim, Plaintiffs Have Satisfied the Evidentiary Standard.

There is no specific evidence that Plaintiffs must present in order to satisfy their burden at this first step. For instance, "[P]laintiffs do not need to provide evidence that every facility relevant to the proposed class maintains an illegal policy." *Adams*, 242 F.R.D. at 537. "The threshold inquiry [also] does not require that the extent of the potential plaintiffs' damages be identical or even similar." *Id*. Further, "[t]hat individual supervisors deviated from that practice . . . does not mean that the practice did not exist or that conditional collective certification is inappropriate." *Ramirez*, 941 F.Supp.2d at 1206. The existence or non-existence of particular documents may also not have any bearing on collective certification: for instance, "employees might not use the payroll discrepancy forms to insist on being paid . . . for . . . fear of retaliation . . . ." *Id.* [T]here is [also] no requirement that Plaintiffs have a representative from each department." *Luque v. AT&T Corp.*, 2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2010). All that "[t]he named plaintiff must demonstrate [is] that there existed at least one similarly situated person at a facility other than his own." *Adams*, 242 F.R.D. at 537-38 (emphasis added). To make this showing, "[a] handful of declarations may suffice." *Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 838 (N.D. Cal. 2010).

---

[8] Wizards submits the Declaration of Helen Bergeot to assert that it is the "Judge Conduct Committee" (and *not* Wizards) that has the power and authority to suspend Magic judges. [Dkt. No. 52-9, ¶ 38]. An in-depth article by a judge tasked with analyzing the suspensions makes it clear that, to the contrary, Wizards unilaterally suspended the judges *and informed the JCC afterwards*.  Shaw Supp. Decl. ¶ 33, Ex. H.

7

### C. Despite Defendant's Attempts to Mislead the Court, Plaintiffs' Testimony Supports, Rather than Contradicts, Their Claims.

Wizards attempts to undermine Plaintiffs' credibility by purporting to raise inconsistencies between their declarations and deposition testimony. *See* Opp., 10:23-11:22; 13:11-14:2. Yet, the evidentiary record, when reviewed in its full context, confirms that Plaintiffs' testimony is consistent and credible.

First, Wizards cites to Plaintiffs' testimony that they and other judges have not been paid wages as employees – *i.e.* the very crux of Plaintiffs' claim that Wizards has failed to treat Judges as employees – to manufacture a contradiction with Wizards' occasional payment of compensation to Judges as independent contractors for the events it directly organizes and oversees. *See* Opp. at 10:24-11:4. Plaintiffs do not claim, and have not attempted to claim, that Wizards has never provided them any compensation, whatsoever. *See, e.g.*, Dkt. No. 46, Motion at 13:13-16 ("Wizards has a uniform policy of refusing to pay employee wages to Judges for all the hours they work related to Wizards sanctioned events. Instead, Wizards treats its Judges as 'volunteers' who it compensates, indirectly through its agents, with Magic products or giveaways of variable value.") (emphasis added). Plaintiffs fault Wizards for refusing to acknowledge employer-employee status with Magic judges: i.e., only entering into independent contractor agreements in connection with higher-level, Wizards-run events, and otherwise employing a general policy and practice of treating Judges as volunteers and only compensating them indirectly with product giveaways without ensuring they are paid enough to cover their costs, much less minimum wage or overtime. *See Id.*, 13:12-14:28 (describing Wizards' uniform Judge compensation and expense-reimbursement policies). Consistent with these FLSA allegations, Plaintiffs' have testified that Wizards refused to treat Magic Judges as employees and, accordingly has never paid them W-2 wages, provided them wage statements, or reimbursed their business expenses. *See, e.g.*, Turner Dep., 45:17-46:8 ("I believe judges are *de facto* W-2 employees and at no point are they ever treated as such").[9]

Second, Wizards attempts to use its occasional treatment of Plaintiffs as independent contractors to distance itself from its policy and practice of treating Magic Judges at the vast majority of sanctioned

---

[9] Wizards fails to note that the one occasion Wizards paid for Plaintiff Turner's travel and hotel (Opp. at 11:7-10) was in his capacity as a Regional Coordinator and not as a judge. *See* Turner Dep. 133:20-22 ("Q So you were paid for travel and hotel? A In this case, yes, because there was a [Regional Coordinator] Conference").

8
PLAINTIFFS' REPLY RE: CONDITIONAL CERTIFICATION
CASE NO. 5:16-CV-01924-EJD

events as *volunteers* – not employees. *See* Opp. at 16:2-6; 22:26-23:2. Plaintiffs' testimony uniformly debunks this false equivalency by confirming that Wizards has steadfastly refused to treat Judges as employees – irrespective of whether it did so by misclassifying them as independent contractors or volunteers. S*ee, e.g.*, Turner Dep. 45:17-46:8 ("I believe judges are *de facto* W-2 employees and at no point are they ever treated as such.... We've got stores that are hiring "volunteers," which is illegal to have volunteers for a for profit corporation to help them do their business. All of the labors that judges do are to improve the bottom line of Wizards of the Coast, which their job is to sell magic cards, and we put on the Organized Play program, which is their primary advertising vehicle for selling said cards, and they tell us we are volunteers, which is completely illegal."); *Id*., 48:7-13 ("[Wizards employee] Andy [Hecht] sent me a direct e-mail telling me to never bring up the fact that judge foils are compensation, so I called him and asked him why, and that's when he informed me that we were volunteers and that the foils were gifts, not in any, way, shape, or form compensation commensurate with employment. We were in no way, shape, or form employees."); *Id*., 54:16-17 ("It's very clear from Wizards that judges are interpreted and to be interpreted as ... volunteers, according to the Wizards documentation."); *Id*., 244:4-10 ("[A] lot of communications from Wizards and from higher level judges has been to tell judges that they are volunteers, that this is a hobby, it's a labor of love ... but I have always maintained that this is labor...").

Third, despite Wizards' misattributions (Opp. at 11:14-18), Plaintiffs have consistently testified that hiring and scheduling decisions related to Judges at Wizards sanctioned events are made in accordance with Wizards' policies and procedures. For example, in his declaration, Plaintiff Turner stated that "[m]y work schedule at Wizards' Magic sanctioned events was determined by Wizards whose hiring and scheduling decisions were implemented by head judges operating in accordance with Wizards' policies and procedures and under Wizards supervision." Turner Decl., ¶ 20. Consistent with that declaration, Plaintiff Golightly testified that head judges had informed him that they received instructions from Wizards and implemented Wizards' scheduling and hiring decisions. Golightly Decl. ¶ 20. Neither of these declarations conflict with Turner's deposition testimony that as a head judge, he implemented hiring and scheduling decisions pursuant to Wizards' direction; in fact, Turner goes on to expressly state, "my job was to make sure the tournament was run pursuant to the Wizards rules and policies." *See* Turner Dep., at 187:22-23.[10]

---

[10] Notably, Wizards wholly misattributes declaration testimony by Plaintiff Golightly to Plaintiff

9

PLAINTIFFS' REPLY RE: CONDITIONAL CERTIFICATION
CASE NO. 5:16-CV-01924-EJD

Fourth, Plaintiffs have credibly explained not only their knowledge of the general work schedules and compensation of other judges, but also the basis for that knowledge. Plaintiffs are aware of the typical work schedules and hours worked by other Judges because they worked directly beside those Judges at numerous Wizards sanctioned events, they attended many Wizards sanctioned events as players and observed the work of the hired Judges, or they had conversations, either online or in person, with Judges where they discussed the long hours worked at these events. *See e.g.*, Turner Decl. ¶ 12, 16-19; Turner Dep., 115:1-19 (discussing implementation of shifts of judge work at events), 129:13-22 (typical duties of floor judges); Shaw Decl. ¶¶ 6, 15-16, 22-23; Golightly Decl., ¶¶ 6, 11, 18, 26-27; Stansfield Decl., ¶¶ 4, 8, 13, 17, 20-22; Morrison Decl., ¶¶ 4, 10-11, 16; Rutherford Decl., ¶¶ 4, 9, 13.

Ignoring this strong factual foundation, Wizards attempts to discredit Plaintiff Turner by exaggerating his inability to recall from memory the exact schedules, work hours, or compensation for specific Judges at specific events, some that occurred years ago.[11] *See* Opp. at 13:16-25. Plaintiff Turner is neither required nor expected to have a perfect memory of the work schedule or pay received by every Judge – particularly individuals who worked events that he did not even attend.[12] Rather, his and the other Plaintiffs' testimony confirm the general work schedules and compensation policies affecting Judges. Ironically, it is Wizards, as the putative employer under the FLSA, and not Plaintiffs that has the legal obligation to maintain accurate records of the hours worked by its employees. *See, e.g.*, 29 U.S.C. Section 211(c); 29 C.F.R. Section 516 *et seq*. Wizards' undisputed failure to maintain such records entitles Plaintiffs to an evidentiary inference in their favor regarding hours worked and relieves them of the responsibility to proving their harm with exactitude. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1945)).

---

Turner, in order to tell the Court that "[o]n this same topic, Turner's deposition testimony is in sharp contrast." *See* Opp. at 11:14-18 (comparing Golightly Decl., ¶ 20, mislabeled as Turner Decl. ¶ 20. with Turner Dep., at 184:22-187:4 where Turner describes his experience as a Head Judge).

[11] Wizards attempts to mislead the court by misquoting Plaintiffs' testimony. Wizards claims Plaintiff Turner "could not answer basic questions regarding the Judge activity of his co-plaintiff and friend, Adam Shaw," (Opp. At 13:19-20) when the testimony in question actually concerned Adam *Hubble*, *not* Adam Shaw. *See* Turner Dep., 58-19-60:23.

[12] Wizards makes much of Plaintiff Turner's lack of specific knowledge regarding his fiancée's Judging work hours and compensation (Opp. at 13:21-23), but omits the fact that Plaintiff Turner simply testified that he did not know the precise hours worked or compensation received by his fiancée at events he did not attend. Turner Dep. 74:3-75:15. Turner later testified that he could likely use OPIS database to recreate the work schedules of Judges at sanctioned events. Turner Dep., 70:21-23 (discussing OPIS); *see also* Turner Decl., ¶¶18-20.

Wizards' effort to misconstrue Turner's testimony is evident at Opposition, p. 6:3-7. Wizards attempts to claim that Turner testified that Wizards' product support, i.e. giveaways, could not be used for any purpose other than providing them to individuals who participate at an event. Wizards attempts to blur the lines with this statement; Turner actually testified that "[a]lthough the official policy is that most product support packages are intended for Magic players, it has been a rampant practice for Tournament Operators to use product support as compensation for judges, and it is commonly known and relied upon by judges." Turner Decl., 6:26-7:2.

### D.     Justin Turner's Testimony Undermines Wizards' Testimony

Despite Wizards' attempts to discredit them, Plaintiffs' testimony provides ample evidence of Wizards' uniform control over the work of Judges and undermines Wizards' broad and unsupported claims to the contrary. For instance, Defendant suggests that Wizards is not involved in the Judge Code of Conduct or the Judge Conduct Committee. Opp. at 5:10-13. However, Turner testified that he was "not sure that [the Judge Conduct Committee is] independent of Wizards. The person who's in charge of it is a contracted employee of Wizards or an independent contractor of Wizards... It's my understanding she's contracted by Wizards to oversee the implementation of the Conduct Code and to adjudicate any disputes or violations of said code." Turner Dep., 77:1-78:19; *see also Id.*, 138:17-25 ("[T]he people who are in charge of the JCC were scared of making Wizards angry if they went against the wishes or the desires of Wizards of the Coast. For instance, when I was suspended by Wizards as a judge as well, the JCC gave me a perfunctory suspension in accordance with that, because their policy is that any time Wizards decides to suspend somebody, the JCC also does.").

Similarly, Defendant claims that "Wizards did not propose or have a role in the change in certification levels for Judges," but Justin Turner outlined Wizards' involvement:

> Q And do you know how a decision to change [the Judge Levels] was made?
> A There was a meeting of the Level 4 judges at Wizards of the Coast headquarters in Seattle where they decided to change it.
> Q And how do you know that?
> A I talked to the people who were there.... Aaron Hamer was the judge manager at Wizards of the Coast at that time, and Toby Elliott was Level 5.... Actually, I began working on the level redefinition with Toby starting February the previous year, 2015, and I know the proposal was given to Wizards to change the formulation of the judge

11

program in August of that year, and then they had a meeting in January of 2016 to approve it and set a timeline for publication.

*Compare* Opp. 5:1-3 *with*, Turner Dep. 142:4-143:19.

It rings hollow when Wizards claims it has nothing to do with the Judge certification and qualification requirements (housed on its website) where Mr. Turner testified to "know the process by which some of it works, because as a regional coordinator, we were involved in some of the level changes throughout the years, where Andy [Heckt, Wizards employee] would bring us a presentation from Wizards, and we would be able to comment on it, and certain things we were able to change, certain things we weren't then they would become the rules, then they would be published." *See* Turner Dep., 146:25-147:7. Wizards clearly supports and instructs Magic judges on its website regarding how to become judges and how to effectively move through the ranks. Shaw Supp. Decl., ¶¶ 25-32, Ex. A – G.

## IV. THE COURT SHOULD DISREGARD ATTEMPTS TO DELVE INTO THE MERITS.

### A. Courts in this District Do Not Consider Defendant's Evidence at this Stage.

Courts do not consider evidence submitted in rebuttal to a Section 216(b) motion. *See Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1128 (N.D. Cal. 2009) (The court did not consider the fifty-four declarations that the defendant submitted.).[13] At this stage, "the Court is not inquiring into the merits of these claims or making factual findings." *Brewer*, 2013 WL 100195, at *5. Courts do not "*need [to] even consider* evidence provided by defendants at this stage." *Ramirez*, 941 F.Supp.2d at 1203.[14] A defendant's concern about individualized inquiries does not require the court to deny conditional certification. *See Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, at *5 (N.D. Cal. Aug. 21, 2008). As *Colson* provides: "It is not the Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits . . . .". *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 926 (D.

---

[13] *Hill v. RL Carriers, Inc.*, 690 F.Supp.2d 1001, 1010 (N.D. Cal. 2010) (not considering fifteen declarations); *Brewer*, 2013 WL 100195, at *5 (not considering the declarations or payroll records that defendant presented).

[14] *See also Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009); *Lewis*, 669 F.Supp.2d at 1128; *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, at *5 (N.D. Cal. Aug. 21, 2008).

Ariz. 2010). Instead, Defendant should submit its evidence at a later stage. *Brewer*, 2013 WL 100195, at * 5.

## V. PLAINTIFFS' NOTICE TO COLLECTIVE MEMBERS IS NECESSARY AND COMPLIES WITH THE LAW.

Plaintiffs properly seek to notify "All current and former judges who worked at Magic: the Gathering events sanctioned by Wizards of the Coast, LLC from April 12, 2013 through the present" with the Proposed Notice of Collective Action Lawsuit. The language in the notice, the workers to be notified and the time period of workers to be notified are all appropriate. Case law – including that to which Defendant cites – confirms that the Court should provide notice to employees, who worked for Defendant, any time beginning from three years before the date on which Plaintiffs filed the original complaint until the resolution of this action. *Adams*, 242 F.R.D. 530.14.[15] Where the issue of willfulness, which triggers the three-year period, is disputed, courts "will not make a determination of willfulness at this early stage and decline[] to limit the scope of notice to . . . the last two years." *Id.* at 542. Lastly, the law directs Defendant to produce the contact information of PCMs that Plaintiffs have requested to ensure that the notice is properly disseminated.[16] Once the notice is disseminated to PCMs, they should have a 90-day notice period to opt in to the case. "[T]imeframes of sixty to ninety days . . . have become the presumptive standard in this District." *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at * 6 (N.D. Cal. July 18, 2012). Longer periods are appropriate in cases where the prospective class may be difficult to locate or is very large. *E.g.*, *Brewer*, 2013 WL 100195, at *5 (The court ordered a 90-day opt-in period for a proposed class of 8,000 employees.); *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *15 (C.D.Cal., Jan.31, 2012) (180–day opt-in period appropriate for class of low-income migrant workers). The applicable statute of limitation should also be tolled, as requested in Plaintiffs Administrative Motion. See, Docket No. 51. "[T]he equitable tolling doctrine is not as limited in the FLSA context as Defendant claims . . . ." *Stitt v. San Francisco Mun. Transp. Agency*, 2014 WL 1760623, at *11 (N.D. Cal. May 2, 2014). Tolling should be provided for the PCMs in this case in light of the

---

[15] *See also Burch*, 500 F.Supp.2d 1181; *Barron*, 242 F.Supp.2d at 1106.

[16] *Adams*, 242 F.R.D. at 539; *Lewis*, 669 F.Supp.2d at 1128; *Daniels*, 2013 WL 1758891; *Burch*, 500 F.Supp.2d at 1191; *Oliver*, 2008 WL 7483891, at *4.

13

delays Plaintiffs have experienced in obtaining a hearing date. *Ribot v. Farmers Ins. Grp.*, 2013 WL 3778784, at *17 (C.D. Cal. July 17, 2013); *Adams*, 242 F.R.D. at 542–43.

## VI. DEFENDANT'S OBJECTIONS TO EVIDENCE

Contrary to what Defendant argues, there are no evidentiary defects with Plaintiff's evidence. As an initial matter, Defendant's evidentiary objections should be rejected on procedural grounds because they fail to comply with Local Rule 7-3(a), which provides that "Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Defendant has not set forth its objections in its brief, but instead attached <u>seven</u> separate exhibits totaling 79 pages, which clearly violates this Court's order limiting oppositions to 25 pages. Further, the evidence Plaintiffs submit in support of their motion is not viewed under strict evidentiary standards. *See Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), at fn. 1 (C.D. Cal. Aug. 4, 2014) ("The court need not address the ultimate admissibility of the parties' proffered exhibits, documents, and testimony at this stage and may consider them where necessary for the resolution of the [motion] . . . ."); *Newton v. Schwarzenegger*, 2010 WL 2280532, at *4 (N.D. Cal. June 7, 2010); *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477 (E.D.Cal. Oct. 3, 2005) (disregarding hearsay and foundational challenges to declarations submitted in support of motion for conditional certification). Also see, *Barron v. Henry Cnty. Sch. Sys.*, 242 F.Supp.2d 1096, 1098 (M.D. Ala. 2003) [allowing Plaintiffs to proceed with no evidence of any particular employment practice leading to the alleged violations]. As the Court in *Davis* explained:

> First, this is a non-dispositive motion, and unlike a Rule 56 motion for summary judgment, there is no express requirement that the evidence considered be admissible for purposes of trial. Second, by considering evidence at this stage, the Court is not making any binding determination as to the admissibility of evidence for purposes of trial. Many courts have relaxed the evidentiary requirements for plaintiffs at the conditional certification stage because the evidence has not been fully developed through discovery and the evidence will be subjected to greater scrutiny at the second stage. Indeed, Plaintiff's declarations suffer similar foundational issues raised by SSC that are addressed below. As the Court recommends that the evidentiary standards be relaxed with respect to Plaintiff's declarations, SSC's testimonial evidence will be viewed similarly." *Davis v. Soc. Serv. Coordinators, Inc.*, No. 1:10-CV-02372-LJO-SK, 2012 WL 3744657, at *6–7 (E.D. Cal. Aug. 28, 2012)

Lastly, to assuage Defendant's purported foundation concerns regarding exhibits submitted with the moving papers, Plaintiffs provide a Supplemental Declaration from Adam Shaw providing further foundation for the exhibits referred to in the moving papers and attached to the Cornell Declaration.

14
PLAINTIFFS' REPLY RE: CONDITIONAL CERTIFICATION
CASE NO. 5:16-CV-01924-EJD

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court conditionally certify the collective action pursuant to 29 U.S.C. § 216(b), toll the statute of limitation for PCMs as requested in Plaintiffs' Administrative Motion (Dkt. No. 51), authorize notice as proposed by Plaintiffs, and order Defendant to produce the putative opt-in list within fourteen (14) days of its order of conditional certification.

Dated: July 5, 2017

By: /s/Matthew Righetti
Matthew Righetti, Esq.
RIGHETTI GLUGOSKI, PC
456 Montgomery St., Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900
Facsimile: (415) 397-9005

Attorneys for Plaintiffs, the Proposed Collective and the Putative Classes