1
2
3
4
5

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9

ADAM SHAW, PETER GOLIGHTLY, JUSTIN TURNER, and JOSHUA STANSFIELD as individuals and on behalf of all others similarly situated and the general public,

|            |
|------------|
| Case No. 5:16-cv-01924-EJD |
| *CLASS ACTION* |

10      Plaintiffs,
11   v.

12   WIZARDS OF THE COAST LLC,

**STIPULATED ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION (ESI)**

13      Defendant.

14
15      The Parties to the above-captioned action HEREBY STIPULATE AND
16   AGREE, by and through their undersigned counsel, that the following
17   specifications shall govern discovery of electronically stored information ("ESI")
18   produced by the Parties during discovery in the above-captioned action.

19   **1.     PURPOSE**
20      This Order will govern discovery of electronically stored information
21   ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this
22   Court's Guidelines for the Discovery of Electronically Stored Information, and
23   any other applicable orders and rules.

1    This Stipulation shall not enlarge, reduce, or otherwise affect the scope of

2  discovery in this litigation as governed by the Federal Rules of Civil Procedure,

3  the local rules of court, the Parties' previous meet and confer discussions and/or

4  agreements, and the Court's orders (other than any default rules governing

5  electronic discovery which this Stipulation explicitly replaces), nor imply that

6  discovery produced under the terms of this Stipulation is properly discoverable,

7  relevant, or admissible in this or in any other litigation.

8  **2.    COOPERATION**

9    The Parties are aware of the importance the Court places on cooperation

10  and commit to cooperate in good faith throughout the matter consistent with this

11  Court's Guidelines for the Discovery of ESI. The Parties shall take reasonable

12  steps to comply with the procedures set forth in this Stipulation.

13    Consistent with the Northern District of California's Guidelines for the

14  Discovery of Electronically Stored Information, and the Parties' obligations

15  under applicable provisions of the Federal Rules of Civil Procedure, the Parties

16  will attempt to resolve, in person, in writing (including e-mail), or by telephone,

17  disputes regarding the issues set forth herein prior to filing a motion with the

18  Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute

19  after a good faith effort, any Party may seek Court intervention in accordance

20  with the Court's procedures.

21    Nothing in this Stipulation shall be interpreted to require disclosure of

22  materials that a Party contends are not discoverable or are protected from

23  disclosure by the attorney-client privilege, the attorney work product doctrine, or

1    any other privilege that may be applicable.    Additionally, nothing in this

2    Stipulation shall be deemed to waive or limit any Party's right to object to the

3    production of certain electronically stored information, to move for a Protective

4    Order, or to move to compel, pursuant to the Federal Rules of Civil Procedure.

5    **3.    LIAISON**

6        The Parties have identified liaisons to each other who are and will be

7    knowledgeable about and responsible for discussing their respective ESI.    Each

8    e-discovery liaison will be, or have access to those who are, knowledgeable about

9    the technical aspects of e-discovery, including the location, nature, accessibility,

10    format, collection, search methodologies, and production of ESI in this matter.

11    The Parties will rely on the liaisons, as needed, to confer about ESI and to help

12    resolve disputes without court intervention.

13        Defendant's    ediscovery    liaison    is    Catharine    Morisset,

14    cmorisset@fisherphillips.com.    Plaintiffs' ediscovery liaison is Matthew Righetti,

15    Matt@righettilaw.com.

16    **4.    PRESERVATION**

17        The Parties acknowledge that they have an obligation to take reasonable

18    and proportional steps to preserve discoverable information in the Party's

19    possession, custody, or control. The Parties have agreed that preservation of

20    potentially relevant ESI will be reasonable and proportionate. To reduce the costs

21    and burdens of preservation and to ensure proper ESI is preserved, the Parties

22    agree that:

23

3
**STIPULATED ORDER FOR DISCOVERY OF ESI**

1    A. <u>Time Frame</u>.  ESI created or received since April 2013 through present

2    has been preserved, where it otherwise existed at the time of filing of the relevant

3    Complaint in this case or the parallel case *Yale v. Wizards of the Coast LLC,*

4    U.S.D.C for the N.D. Cal., Case No. 15-CV-06337-EJD for the individuals the

5    Defendant believes are key players as Defendant identified on Exhibit A.  As

6    listed on Exhibit A, Defendant has also preserved additional ESI, to the extent

7    such exists, for custodians later identified by Plaintiffs, without waiver to

8    Defendant's objections regarding review and production for ESI for these

9    custodians (unduly burdensome, not reasonably calculated to lead to the

10   discovery of admissible evidence, proportionality).  These statements are also

11   without waiver to Plaintiffs' arguments that they are entitled to production of

12   older ESI, if it exists, and for additional custodians.

13   B. <u>Custodian Exchange</u>:  The Parties have conferred regarding the types of

14   ESI they believe should have been/should continue to be preserved and the

15   custodians, or general job titles or descriptions of custodians, for whom they

16   believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing

17   manager," and exchanged custodian lists. Without waiving any right to

18   identify/discuss/propose additional custodians as the litigation progresses, as

19   shown on the attached Exhibit A, the Parties have agreed on certain custodians

20   for whom ESI will be preserved, subject to the limitations set forth above.  This

21   agreement on the custodians whose ESI will be preserved is in no way a waiver

22   by either Party that a search or review of each and every custodian's ESI would

23   be/would not be proportional, not unduly burdensome, or reasonably calculated

4

**STIPULATED ORDER FOR DISCOVERY OF ESI**

1   to lead to the discovery of admissible evidence.

2        D.   Defendant maintains that the circumstances of this case do not warrant

3   preservation, collection, review, or production of ESI that is not reasonably

4   accessible because they anticipate that enough relevant information can be

5   yielded from reasonably accessible sources and, as necessary and appropriate,

6   supplemented with deposition discovery. Moreover, the remote possibility of

7   additional relevant information existing in not reasonably accessible sources is

8   substantially outweighed by the burden and cost of preservation, collection,

9   review, and production of ESI from sources that are not reasonably accessible.

10  Plaintiffs will not agree to either of the above statements.   Without waiving

11  Plaintiffs' right to seek production of such ESI at a later date, provided such even

12  exists, the Parties agree that the following ESI is generally <u>not</u> reasonably

13  accessible, and will not be searched in either Party's initial production or any

14  production if it does not exist:

15       1.   Deleted, shadowed, damaged, residual, slack, fragmented, or other
    data only accessible by forensics. Defendant is uncertain that such data may even
16  exist, and would be unable to confirm this without having system hard drives
    cloned and searched for a forensic examiner.
17
         2.   Random access memory (RAM), temporary files, or other ephemeral
18  data that are difficult to preserve without disabling the operating system.
    Defendant does not have such data available.
19
         3.   On-line access data such as temporary Internet files, history, cache,
20  cookies, and the like. Defendant believes no such data exists.

21       4.   Data stored on photocopiers, scanners, and fax machines.

         5.   Data in metadata fields that are frequently updated automatically,
22  such as last-opened dates.

23       6.   Data maintained or duplicated in any electronic backup system for

**STIPULATED ORDER FOR DISCOVERY OF ESI**

the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, because such data is routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy prior to this litigation. Plaintiffs reserve the right to inquire or seek production of available backups that may exist if discoverable information is not readily accessible.

7.    Server, system, or network logs.

8.    Voicemail messages.

9.    Data remaining from systems possessed by either Party that is no longer in use that is unintelligible on the systems in use.  Defendant states that no such data exists.

10.    Instant messages, regardless of platform.  Wizards did not make any instant message platform available to its users until roughly the last year. It currently makes Lync/Skype available to its users, but logs are unavailable and users are not allowed to use persistent chat or save conversations in the ordinary course of business under Wizards' retention policies. Defendant shall preserve such ESI to the extent such exist that are/were sent using a platform that Defendant administers.

**5.    SEARCH METHODOLOGY AND SEARCH TERMS/EMAIL**

The Parties have conferred regarding email production, exchanged custodian lists, and Plaintiff has provided proposed initial search terms and custodians. Plaintiffs have asked for a review of 109 different key word searches for nearly 40 custodians from January 1, 2010 to the present. Defendant has provided information to Plaintiffs it contends demonstrates why, given the potential number of reviewable data such a search would net, it maintains that Plaintiffs' proposed, custodians, search terms, and dates are not reasonably calculated to lead to the discovery of admissible evidence and that conducting a search and review of proposed custodians is unduly burdensome and disproportional.  As indicated on the attached Exhibit A, some of the custodians

6

1 have not worked for Defendant for several years, consequently, those custodians'
2 email accounts no longer exist.   Further, given the number of custodians
3 Plaintiffs have listed, Defendant's employees' substantial use of emails, and
4 Plaintiffs' proposed search terms, Defendant maintains that such a search and
5 review of potentially responsive emails is not reasonably calculated to lead to the
6 discovery of admissible evidence, would be unduly burdensome, and is cost
7 prohibitive.   Plaintiffs contend that Defendant has failed to identify with
8 specificity the purported costs or hours of review required to produce Plaintiffs'
9 requested ESI and therefore has not carried its burden to prove undue burden.
10 Plaintiffs have declined to share any ESI production costs. Defendant preserves
11 its right to seek contribution of ESI production costs from Plaintiffs and to
12 challenge attorneys' fees related to Plaintiffs efforts related to ESI review,
13 particularly as relates to Plaintiffs' request and decision to review non-responsive
14 ESI.   Plaintiffs reserve the right to oppose any efforts of Defendant to seek
15 contribution and defend their efforts related to ESI review, particularly since
16 Plaintiffs maintain that Defendant advanced the ESI discovery on its own without
17 consulting with Plaintiffs or engaging in a joint effort for the purpose of
18 controlling the process.

19         Email Search Methodology:

20         The Parties have subsequently agreed to the following search, review, and
21 production methodology, without waiver of either Party's ability to later challenge
22 the method used or either Party's production. The Parties acknowledge their
23 ongoing obligations to supplement prior responses.  The Parties further agree that

7

**STIPULATED ORDER FOR DISCOVERY OF ESI**

the fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege may be made, in the first instance, by the Producing Party.

*Defendant's Production.* Defendant has decided to search, review, and produce using predictive analytics/predictive coding, i.e., Catalyst Insight Predict. Catalyst uses a proprietary algorithm called Contextual Diversity. This predictive analytics/coding will begin with a "seeding" process.

    1.   *Phase I and II.* To "seed" a set to train Catalyst's predictive coding software, Defendant will begin by using analytical search techniques/review as set forth in Exhibit B. This seeding process shall include up to three waves of manual review to provide Predict with a base of coding decisions from which it will rank the remaining universe of documents based on a spectrum of responsiveness. As set forth on Exhibit B, Defendant shall review either all hits for each of the custodians identified in the first two Phases or a random sampling[1] of hits, and then review for responsiveness. Defendant shall produce documents marked responsive unless otherwise privileged. Defendant shall also produce to Plaintiffs a random sample set of "nonresponsive" emails (unless privileged) in order to confirm responsive coding. Plaintiffs have also requested to review a

---

[1]"Random sample," as used throughout, refers to a random sample size generated using Catalyst's mathematical random sampling parameters to achieve a confidence level of 95% with a 5% margin of error, and an expected proportion of 50% responsive.

**STIPULATED ORDER FOR DISCOVERY OF ESI**

1  random sample of non-responsive, "no hit" emails, which Defendant has also

2  agreed to review and produce as part of its initial production.

3        2.   *Phase III.* After completion of Phase I and II review and

4  production, Plaintiffs are invited to (1) identify a reasonable number of specific

5  custodians or additional search terms for a third phase of review and (2) confer

6  regarding any responsive coding decisions. Plaintiffs shall provide such feedback

7  to Defendant so that the parties can meaningfully confer within 45 days after the

8  completion of Defendant's initial production. Provided the parties reach agreement

9  as to this third phase of specific custodians and additional search terms, Defendant

10  shall review an agreed upon samplings of Plaintiffs' suggested "keyword" searches

11  for the third phase of agreed upon custodians and produce non-privileged

12  responsive documents. And again, Defendant shall produce to Plaintiffs a random

13  sample of "nonresponsive" emails (unless privileged) to review and to confirm

14  responsive coding. Plaintiffs have also requested to review a random sample of

15  non-responsive, "no hit" emails, which Defendant has also agreed to produce as

16  part of its Phase III production. Defendant shall clearly identify the non-responsive

17  and non-responsive, "no hit" emails when produced to Plaintiffs.

18        3.   *Phase IV.* After the third wave of the seeding/review process

19  is complete, Defendant shall use Predict to rank the remaining documents subject

20  to review/production and, after the post-seeding ranking is set, review a systematic

21  random sampling of any remaining emails that have been judged as responsive by

22  Catalyst and not yet reviewed for the 7 custodians identified in Phase I and II and

23  any additional custodians identified in Phase III, and produce otherwise responsive

**STIPULATED ORDER FOR DISCOVERY OF ESI**

1   documents that have not already been produced.  Defendant shall also use Predict
2   to rank remaining unreviewed documents to include the remaining Wizards
3   custodians listed on Exhibit A. Defendant reserves the right to object that
4   Plaintiffs' search terms and proposed custodian list is overbroad, disproportional,
5   and not reasonably calculated to lead to the discovery of admissible evidence.
6   Plaintiff's position is that Defendant should produce all documents that are ranked
7   by Predict based on the total number of custodians. The parties shall confer in good
8   faith regarding review of emails for the additional 37 custodians that Plaintiffs
9   have identified. In the event coding conflicts arise between Predict and human
10  reviewers, Defendant agrees to apply an additional review those coding decisions
11  to confirm accuracy and produce responsive documents.  If Defendant identifies
12  coding conflicts and does not complete this additional review process before the
13  production date, Defendant shall immediately inform Plaintiffs as to the issue and
14  confer regarding a new production deadline. The parties also agree to meet and
15  confer in good faith to attempt to resolve any disagreements regarding the coding
16  applied to the documents in the seed set or regarding the broader document review
17  process using Predict.

18          4.    *Final.* Finally, as part of the quality control process, Defendant
19  will review a random sample of non-reviewed documents, subject to agreement by
20  the Parties, contained in the remainder of the database that were identified as non-
21  responsive and produce any additional responsive documents, if any.  To further
22  ensure quality control, Defendant will produce to Plaintiffs prior to the cessation of
23  its review (1) a list of the "High Ranked Positive Terms"; and (2) an estimate of

1    the those number of documents within the entire review set compared to the

2    number of documents produced.   Plaintiffs reserve their right to request that

3    Defendant review of additional search terms or custodians, and Defendant agrees

4    to confer in good faith regarding any such requests, without waiver of its

5    objections.

6        *Plaintiffs' Production.* To the extent Plaintiffs intend to collect responsive

7    ESI from their emails using search terms, the Parties shall first meet and confer

8    regarding proposed search terms, date limitations (if any), and the priority of

9    custodians to be searched.   Plaintiffs will also provide a list of search terms or

10   other search limits used as part of their discovery responses.   Plaintiffs shall

11   meet and confer to attempt to resolve any disagreements regarding the search

12   terms, dates limits, or other limits applied.

13       (B)   <u>Non-Emails</u>:  The Producing Party agrees to conduct a reasonable

14   inquiry into potential sources for unique and discoverable non-email ESI within

15   the Producing Party's possession, custody, or control, and to produce any

16   responsive records identified from such sources.   To the extent a Party intends to

17   collect responsive ESI from non-email using search terms, it will follow the

18   procedures described in paragraph immediately above.  The Parties further agree

19   that Excel and image files shall be excluded from the Predict review process and

20   instead, shall be manually reviewed.

21   **7.    IDENTIFICATION AND COLLECTION OF DOCUMENTS**

22       A.   <u>Ongoing Obligations</u>: Except as otherwise agreed upon in this

23   Stipulation, the Parties will continue to meet and confer in an effort to agree upon:

1          1.   Custodians;

2          2.   Search methodology and search terms to be applied;

3          3.   Location of relevant data sources including custodial, non-custodial and third-parties; and

5          4.   Reasonable timeframe for collection, review, and production of documents.

7          B.   <u>Location of ESI</u>:  ESI will be collected from custodians agreed upon by the Parties by searching those custodians' local hard drives, network drives or active server directories (i.e., shared drives), and reasonably accessible email accounts, to the extent that these sources contain potentially relevant information.

12   **8.   PRODUCTION FORMATS**

13        A.   Defendant agrees to produce documents in single page TIFF format with an accompanying file for each document containing the text of the document in .txt format.  Defendant shall also provide a Summation load file (.dii) and a text file in .csv format containing all relevant metadata. Excel, database, multimedia (audio video) files, if responsive, will be produced natively where possible. Plaintiffs agree to produce either in native document format with bates numbered versions as PDFs (if the native documents have already produced) or TIFF images with a CSV file containing metadata and a .opt file with the image TIFFs compatible with Concordance. Excel, database, multimedia (audio video) files, if responsive, will be produced natively where possible. If particular documents warrant a different format, the Parties will cooperate to

**STIPULATED ORDER FOR DISCOVERY OF ESI**

1 arrange for the mutually acceptable production of such documents. If a Producing

2 Party wishes to designate a Native File "Confidential," it shall do so by

3 producing the Native File on media that is labeled "Confidential" or by branding

4 a placeholder TIFF image "Confidential." The Parties agree not to degrade the

5 searchability of documents as part of the document production process.

6       B.    <u>Bates Numbering</u>: Each page of a produced document will have a

7 Bates number electronically "burned" onto the image, if possible, or by file,

8 which includes an alpha prefix along with a fixed number, i.e., WOTC_0000001.

9 This format must remain consistent across all production numbers and be placed

10 on the lower right corner of all images so as not to unreasonably obliterate or

11 obscure any information.  No other legend or stamp will be placed on a document

12 image other than confidentiality legends (where applicable) or redactions.

13       C.    <u>Social Media</u>:  ESI from social media websites (e.g., LinkedIn,

14 Facebook, Twitter) may be produced by capturing information through "screen

15 shots" or "screen captures" and converting same into images along with

16 corresponding extracted text or OCR unless the Parties agree to perform bulk

17 exports of accounts, such as by exporting out a profile from LinkedIn or

18 downloading a copy of an individual's Facebook data or archive.

19       E.  <u>Production Media</u>:  Documents shall be exchanged on DVD-ROMs,

20 CD-ROMs, USB drives, portable hard drives, or through secure file transfer

21 protocols (e.g., FTP) or similar secure electronic transmission.  The production

22 media shall be labeled with the Volume Number and Production Date along with

23 the Bates Number range(s) of the materials, and where not practicable to do so,

**STIPULATED ORDER FOR DISCOVERY OF ESI**

1   may be provided in an accompanying letter. Any document production that
2   contains "non-public personal information" (as defined in the Gramm-Leach-
3   Bliley Act) shall be produced in encrypted form. If a Producing Party encrypts or
4   "locks" the production, the Producing Party shall send, under separate cover, an
5   explanation of how to decrypt the files.

6        F. <u>Technical Problems</u>.   The Parties agree to promptly alert all other
7   Parties concerning any technical problems associated with complying with this
8   Stipulation.   To the extent compliance with this Stipulation imposes an undue
9   burden with respect to any protocol, source, or search term listed herein, the
10  Parties shall promptly confer in an effort to resolve the issue.

11  **9.    DEDUPLICATION**

12        A.    <u>Global or Horizontal Deduplication</u>:   A Party is only required to
13  produce a single copy of a responsive document and a Party may de-duplicate
14  responsive ESI (based on MD5 or SHA-1 hash values at the document level)
15  across custodians.   For e-mails with attachments, the hash value shall be
16  generated based on the parent-child/family document grouping.

17        B.    <u>Threading</u>:   Each Party may also deduplicate e-mails in such a way
18  as to eliminate earlier or incomplete chains of e-mails, and produce only the most
19  complete iteration of an e-mail chain.   Any deduplication tool used by a Party
20  must ensure that an e-mail will be suppressed only if its recipients (including cc
21  and bcc recipients), subject, body text (excluding specified automatic footers and
22  normalized to consolidate white space) and attachments are wholly included in
23

1    another more complete e-mail.  The Parties agree to meet and confer regarding

2    the use of other deduplication methods.

3    **10.    PHASING**

4       Given the anticipated volume of potentially discoverable ESI, the Parties

5    agree to cooperate regarding production, such as prioritizing custodians, key

6    word searches, predictive coding, or specific requests for production as set out on

7    the attached Exhibit B.  The Parties agree that such cooperation does not waive

8    any party's right to request additional discovery, challenge a Party's production,

9    waive any objections to additional discovery, or excuse any party from meeting

10    discovery obligations, including supplementation obligations.  As discovery

11    continues, Parties will meet and confer about subsequent productions, including

12    whether additional production is reasonable, whether the requests are reasonable,

13    proportional, or unduly burdensome.

14    **11.    PRIVILEGE   LOGS   DOCUMENTS   PROTECTED   FROM**

15    **DISCOVERY**

16       A.    The Parties agree that they need not exchange the text of litigation

17    hold/retention instructions/preservation letters issued in this litigation as such

18    instructions are presumed to be subject to withholding on the basis of the

19    attorney-client privilege and work product doctrine, but the Parties reserve the

20    right to request production of such documents.

21       B.    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or

22    work-product-protected document, whether inadvertent or otherwise, is not a

23    waiver of privilege or protection from discovery in this case or in any other

1    federal or state proceeding. For example, the mere production of privileged or

2    work-product-protected documents in this case as part of a mass production is not

3    itself a waiver in this case or in any other federal or state proceeding.

4        C.    A Party need only include one entry on the privilege log to identify

5    withheld e-mails that constitute an uninterrupted dialogue between or among the

6    same individuals (often referred to as an "e-mail thread"); however, to the extent

7    the e-mail thread, or any portion, shows distribution to additional individuals then

8    those additional individuals/recipients shall be identified on the privilege log. E-

9    mail threads may only be withheld in their entirety if all responsive portions are

10   privileged; otherwise, threads should be produced with privileged portions

11   redacted. Duplicative emails suppressed using email thread suppression need not

12   be reflected on a Party's privilege log.

13   D.    Communications involving trial counsel that post-date the filing of the

14   complaint need not be placed on a privilege log.

15   **12.    Costs and Burden**

16       Defendant acknowledges that burdens placed on any party during this

17   litigation, including during discovery, must be proportional to the litigation itself,

18   including the nature of the claims and the amount in controversy. *See* Fed. R.

19   Civ. P. 1, Fed. R. Civ. P. 26 (b)(2)(C). Plaintiffs decline to make this

20   acknowledgement. Any party reserves the right to seek shifting or sharing of

21   certain discovery costs, including ediscovery vendor and attorney fees, in

22   appropriate circumstances as allowed by law. *See* Fed. R. Civ. P. 26 (b)(2)(B),

23   (C). For example, Defendant reserves its right to seek payment from Plaintiffs for

16
**STIPULATED ORDER FOR DISCOVERY OF ESI**

1  all reasonable costs and fees it incurs related to its attorney review and

2  production should ESI production exceed more than 30,000 documents.

3  **13. PROTECTIVE ORDERS**

4      Nothing in this Stipulation shall be deemed to limit, modify, or override

5  any provision of any Protective Order signed by the Parties and entered by the

6  Court in this matter. In the event of any conflict between this Stipulation and the

7  Protective Order, the provisions of the latter shall govern.

8  **14. MODIFICATION**

9      This Stipulated Order may be modified by a Stipulated Order of the Parties

10 or by the Court for good cause shown.

11 **IT IS SO STIPULATED**, through Counsel of Record:

12 DATED: December 1, 2017

13     CATHARINE MORISSET

14     FISHER & PHILLIPS, LLP
    Attorney for Defendant

15

16 DATED: December 4, 2017

17     MATTHEW RIGHETTI
    RIGHETTI GLUGOSKI, P.C.

18     Attorney for Plaintiffs

19     **IT IS ORDERED** that the foregoing Stipulation is approved.

20

21 Dated: _____

22     UNITED STATES DISTRICT/MAGISTRATE
    JUDGE

23

**STIPULATED ORDER FOR DISCOVERY OF ESI**

**EXHIBIT A**
**LIST OF CUSTODIANS**

| No. | Identified By Party | Custodian Name | Job Title/Contract Title | Wizards Separation Date/Contract End Date | Preserved/ Objection[2] |
|---|---|---|---|---|---|
| 1. | Plaintiffs | Marchella Allen | Event Operations Specialist | Current | Preserved |
| 2. | Plaintiffs | Garth Avery | Content Specialist | Current | Preserved |
| 3. | Plaintiffs | Paul Bazakas | Sr Director Sales Operations | Current | Preserved |
| 4. | Plaintiffs | James Bennett | Independent Contractor for Judge Services | Currently, not under contract | Never Wizards employee; no Wizards email address |
| 5. | Plaintiffs/ Defendant | Helene Bergeot | Director Global Org Play | 5/16/17 | Preserved |
| 6. | Plaintiffs | Nelson Brown | Customer Service Rep | Current | Preserved |
| 7. | Plaintiffs | Sandra Castaneda | Org Play Coordinator | Current | Preserved |
| 8. | Plaintiffs | John Carter [sic] John Carter, Jr. | Manager Marketing OP Administration<br><br>Independent Contractor for Judge Services<br><br>PT Philadelphia | 8/23/2004 – 7/11/2005<br><br>11/03/2008 - 10/14/2009<br><br>9/4/2011 | N/A[3] |
| 9. | Plaintiffs | Kyle Cassinerio | Customer Service Rep | Current | Preserved |
| 10. | Plaintiffs/ Defendant | Elaine Chase | VP Global Brand Strategy and Marketing | Current | Preserved |
| 11. | Plaintiffs | Greg Collins | Manager Org Play Production | Current | Preserved |
| 12. | Plaintiffs | Christian Cocks | Wizards of the Coast President | Current | Preserved |
| 13. | Defendant | RE Dalrymple | Director, Magic: the Gathering Organized Play | May 2016 | Preserved |
| 14. | Plaintiffs | Adrian Davis [sic] Adrian Davilla | Customer Service Rep | 03/17/2014 | Preserved |

[2] Defendant issued litigation hold notices to key players in October 2015 and has added preserved emails for non-key players based on Plaintiffs' list of custodians. Defendant does not agree that custodians listed only by Plaintiffs are key players, and do not waive their objections to review or production of emails belonging to such custodians.
[3] N/A = email account was deleted prior to notice of lawsuit per Defendant's email retention policy.

| 15. | Plaintiffs/ Defendant | Ron Foster | Tournament Operations Manager | Current | Preserved |
|---|---|---|---|---|---|
| 16. | Plaintiffs | Alexander Green | Customer Service Rep | Current | Preserved |
| 17. | Plaintiffs | Paul Hagan | Director Retail Development | Current | Preserved |
| 18. | Plaintiffs/ Defendant | Aaron Hamer | Interim Judge Community Manager (9/2015-1/2016) Business Operations Manager, Premier Play (1/2016-7/2016) | 7/2016 | Preserved |
| 19. | Plaintiffs | Matthew Hamilton | Sr Customer Service Rep | Current | Preserved |
| 20. | Plaintiffs | Andrew Heckt | Judge Community Manager (former) | 9/3/2015 | N/A |
| 21. | Plaintiffs | Ethan Jones | Org Play Coordinator | Current | Preserved |
| 22. | Plaintiffs | Philip Justus | Customer Service Rep | Current | Preserved |
| 23. | Plaintiffs/ Defendant | Laura Kilgore | Tournament Operations Manager | Current | Preserved |
| 24. | Plaintiffs | Scott Knoblich | SVP Global Sales & Trade Marketing | Current | Preserved |
| 25. | Plaintiffs/ Defendant | Scott Larabee | Manager Org Play Programs | Current | Preserved |
| 26. | Plaintiffs | Bernard Menth | Org Play Coordinator | 5/19/17 | Preserved |
| 27. | Plaintiffs | Tara Montoya | Manager Customer Service Retail Support | Current | Preserved |
| 28. | Plaintiffs/ Defendant | Sarah Mox (Smith) | Associate Community Manager Judge Network | Current | Preserved |
| 29. | Plaintiffs | Jacob Bourigat [sic] Nourigat | Supervisor Retail Customer Service | Current | Preserved |
| 30. | Plaintiffs | Kyle O'Neill | Sr Retail Support Rep | Current | Preserved |
| 31. | Plaintiffs | Leah Potyondy | Direct Sales Coordinator | Current | Preserved |
| 32. | Plaintiffs | Bryan Prilman [sic] Prillaman | Exemplar Program Facilitator (IC) | Independent Contractor | Never a Wizards employee/ Never provided Wizards email address |
| 33. | Plaintiffs | Aaron Reed | Manager Premier Play Operations | Current | Preserved |
| 34. | Plaintiffs | Mike Rosenberg | Content Specialist | Current | Preserved |
| 35. | Plaintiffs | Nataly Scheidt | Customer Service Rep | Current | Preserved |
| 36. | Plaintiffs | Eric Sorenson [sic] Sorensen | Coordinator for OP Administration | 5/9/2007 – 7/5/2014 | N/A |

| | | | | | |
|---|---|---|---|---|---|
| 37. | Plaintiffs | Dan Tebow | Supervisor Retail Customer Service | Current | Preserved |
| 38. | Plaintiffs | Joseph Torra | Customer Service Rep | Current | Preserved |
| 39. | Plaintiffs | Joe Yochum | Sr Mgr Org Play Operations | Current | Preserved |
| 40. | Plaintiffs | Gail Gordon | Director Accounting | Current | Preserved, 10/17 |
| 41. | Plaintiffs | Bryce Haley | Manager | Current | Preserved, 10/17 |
| 42. | Plaintiffs | Patrick Wong | Assoc Specialist Fraud | Current | Preserved, 10/17 |
| 43. | Plaintiffs | Mclaine Crowell | Specialist Fraud | Current | Preserved, 10/17 |
| 44. | Plaintiffs | Joshua Stoneburg | Specialist Fraud | Current | Preserved, 10/17 |
| 45. and up | Defendant | All named Plaintiffs and all opt-in Plaintiffs | (Judges) | -- | Plaintiffs to Provide Information |

## EXHIBIT B
## SEARCH TERMS AND CUSTODIANS

| Search # | Search Terms (detailed) | Phase I Hits Hamer, Larabee, Mox/Smith[4] | Phase I Review | Phase II Hits Bergeot, Foster, Kilgore, Chase[5] | Phase II Review | Phase III Sampling: Custodians TBD |
|---|---|---|---|---|---|---|
| 1 | "Judge Program" | 8,345 | Sampling[6] | 3,592 | Sampling[7] | Parties will confer |
| 2 | "Head Judge" | 10,912 | Sampling | 6,471 | Sampling | Parties will confer |
| 3 | "Judge Level*" | 3,211 | Sampling | 1,355 | Sampling | Parties will confer |
| 4 | "Level (1 2 3 4 5)" | 51,271 | Sampling | 37 | Sampling | Parties will confer |
| 5 | "Exemplar Program" | 1,045 | All | 258 | All | Parties will confer |
| 6 | "Judge*" near/20 "Foil" | 94,638 | Sampling | 1,143 | Sampling | Parties will confer |
| 7 | "Judge Manager*" | 2,556 | Sampling | 929 | Sampling | Parties will confer |
| 8 | "Community Manager*" | 12,429 | Sampling | 2,024 | Sampling | Parties will confer |
| 9 | "Judge Center" | 5,848 | Sampling | 1,800 | Sampling | Parties will confer |
| 10 | "Judge Apps" | 1,671 | Sampling | 371 | Sampling | Parties will confer |
| 11 | "magicjudges.org" | 15,602 | Sampling | 1,818 | Sampling | Parties will confer |
| 12 | "Judge*" near/20 "volunteer*" | 1,089 | All | 658 | All | Parties will confer |
| 13 | "Judge*" near/20 "employ*" | 1,974 | Sampling | 1,178 | Sampling | Parties will confer |
| 14-16 | "Judge*" near/20 "pay" or "paid" or "compensat*" | 7,555 | Sampling | 1890 | Sampling | Parties will confer |
| 17 | "Judge*" near/20 "wage*" | 2,172 | Sampling | 39 | Sampling | Parties will confer |
| 18 | "Judge*" near/20 "product support" | 7,595 | Sampling | 115 | Sampling | Parties will confer |

[4] The total number of files currently loaded in Catalyst for custodians Hamer, Larabee, and Mox/Smith is 57,043.
[5] The total number files currently loaded in Catalyst for custodians Bergeot, Foster, Kilgore, and Chase is 175,653.
[6] The random sample size will be generated by using Catalyst's mathematical random sampling parameters to achieve a confidence level of 95% with a 5% margin of error, and an expected proportion of 50% responsive.
[7] For emails loaded as of 8/1/17.

| 19 | "Judge*" near/20 "prize support" | 4,799 | Sampling | 30 | Sampling | Parties will confer |
| 20 | "Judge*" near/20 "1099" | 265 | Sampling | 4 | Sampling | Parties will confer |
| 21-23 | "Judge*" near/20 "W-9" or "W-4" or "W-2" | 4,382 | Sampling | 6084 | Sampling | Parties will confer |
| 24 | "Judge*" near/20 "work*" | 19,153 | Sampling | 273 | Sampling | Parties will confer |
| 25 | "Judge*" near/20 "dut*" | 687 | All | 1,012 | All | Parties will confer |
| 26 | "Judge*" near/20 "hour*" | 1,512 | Sampling | 2,825 | Sampling | Parties will confer |
| 27 | "Judge*" near/20 "schedul*" | 3,358 | Sampling | 3,162 | Sampling | Parties will confer |
| 28 | "Judge*" near/20 "contract*" | 4,981 | Sampling | 27 | Sampling | Parties will confer |
| 29 | "Judge*" near/20 "booster box" | 12,940 | Sampling | 2,270 | Sampling | Parties will confer |
| 30 | "Judge*" near/20 "conference*" | 5,555 | Sampling | 745 | Sampling | Parties will confer |
| 31 | "Judge*" near/20 "free*" | 964 | All | 1,543 | All | Parties will confer |
| 32 | "Judge*" near/20 "promot*" | 4,645 | Sampling | 1,336 | Sampling | Parties will confer |
| 33 | "Judge*" near/20 "advanc*" | 2,320 | Sampling | 3,045 | Sampling | Parties will confer |
| 34 | "Judge*" near/20 "certif*" | 6,015 | Sampling | 593 | Sampling | Parties will confer |
| 35 | "Judge*" near/20 "exam" | 3,112 | Sampling | 1,537 | Sampling | Parties will confer |
| 36 | "Judge*" near/20 "test*" | 11,093 | Sampling | 294 | Sampling | Parties will confer |
| 37 | "Judge*" near/20 "stud*" | 427 | All | 411 | All | Parties will confer |
| 38 | "Judge*" near/20 "disqualif*" | 925 | All | 254 | All | Parties will confer |
| 39 | "Judge*" near/20 "disciplin*" | 216 | All | 314 | All | Parties will confer |
| 40 | "Judge*" near/20 "violat*" | 729 | All | 3,815 | All | Parties will confer |
| 41 | "Judge*" near/20 "requir*" | 5,653 | Sampling | 883 | Sampling | Parties will confer |
| 42 | "Judge*" near/20 "conduct*" | 3,525 | Sampling | 926 | Sampling | Parties will confer |
| 43 | "Judge*" near/20 "ban*" | 1,512 | Sampling | 1,067 | Sampling | Parties will confer |
| 44 | "Judge*" near/20 "suspen*" | 2,908 | Sampling | 95 | Sampling | Parties will confer |
| 45 | "Judge*" near/20 "uniform" | 310 | All | 1,349 | All | Parties will confer |

| | | | | | | |
|---|---|---|---|---|---|---|
| 46 | "Judge*" near/20 "shirt" | 5,174 | Sampling | 4,560 | Sampling | Parties will confer |
| 47 | "Judge*" near/20 "communit*" | 16,389 | Sampling | 2,326 | Sampling | Parties will confer |
| 48 | "Judge*" near/20 "rule*" | 4,199 | Sampling | 1,453 | Sampling | Parties will confer |
| 49 | "Judge*" near/20 "polic*" | 2,669 | Sampling | 605 | Sampling | Parties will confer |
| 50 | "Judge*" near/20 "procedur*" | 1,176 | Sampling | 1,903 | Sampling | Parties will confer |
| 51 and 52 | "Judge*" near/20 "WPN" or "Wizards Play Network" | 9,298 | Sampling | 819 | Sampling | Parties will confer |
| 53 | "Code of Conduct" | 2,207 | Sampling | 293 | Sampling | Parties will confer |
| 54 and 55 | "Judge Conduct Committee" or "JCC" | 4,409 | Sampling | 498 | Sampling | Parties will confer |
| 56, 57, and 58 | "Magic Judge Code" or "Judge Code" or "Magic Code" | 683 | Sampling | 311 | Sampling | Parties will confer |
| 59 and 60 | "Regional Coordinator Advisory Committee" or "RCAC" | 2,798 | Sampling | 2207 | Sampling | Parties will confer |
| 61 | "Judge*" near/20 "organized play" | 1,613 | Sampling | 375 | Sampling | Parties will confer |
| 62 | "Judge*" near/20 "OPIS" | 2,001 | Sampling | 113 | Sampling | Parties will confer |
| 63 and 64 | "Judge*" near/20 "Wizards Event Reporter" or "WER" | 11,249 | Sampling | 786 | Sampling | Parties will confer |
| 65 | "Judge*" near/20 "competitive play" | 120 | All | 1,340 | All | Parties will confer |
| 66 and 67 | "Judge*" near/20 "Regional Coordinator" or "RC" | 24,999 | Sampling | 4044 | Sampling | Parties will confer |
| 68-69 | "Judge*" near/20 "tournament organize*" or "TO" | 111,387 | Sampling | 31,860 | Sampling | Parties will confer |
| 70 | "tournament organize*" or "TO" near/20 "contract*" or "agree*" or "require*" | 970 | All | 887 | All | Parties will confer |
| 73 | "Judge*" near/20 "Preliminary Pro-Tour Qualifier" | 2,700 | Sampling | 1,901 | Sampling | Parties will confer |
| 74, 75, and 76 | "Judge*" near/20 "PPTQ*" or ""Pro | 4,589 | Sampling | 1973 | Sampling | Parties will confer |

| | Tour Qualifier" or "PTQ*" | | | | | |
|---|---|---|---|---|---|---|
| 77 | "Judge*" near/20 "Regional Pro-Tour Qualifier" or "RPTQ*" | 1,256 | Sampling | 1744 | Sampling | Parties will confer |
| 79, 80 | "Judge*" near/20 "Magic World Cup" or MWC*" | 17 | All | 9 | All | Parties will confer |
| 81, 82 | "Judge*" near/20 "Magic World Cup Qualifier" or "MWCQ*" | 5 | All | 531 | All | Parties will confer |
| 83, 84 | "Judge*" near/20 "World Magic Cup" or "WMC*" | 2,750 | Sampling | 1729 | Sampling | Parties will confer |
| 85, 86 | "Judge*" near/20 "World Magic Cup Qualifier" or "WMCQ*" | 1,459 | Sampling | 1797 | Sampling | Parties will confer |
| 87 | "Judge*" near/20 "Grand Prix Trial" or "GPT*" | 1,463 | Sampling | 3172 | Sampling | Parties will confer |
| 89 | "Judge*" near/20 "Pro-Tour" | 75,430 | Sampling | 89 | Sampling | Parties will confer |
| 90 | "Judge*" near/20 "Friday Night Magic" or "FNM*" | 1,004 | Sampling | 536 | Sampling | Parties will confer |
| 92 | "Judge*" near/20 "Pre-Release" | 38,996 | Sampling | 132 | Sampling | Parties will confer |
| 93 | "Judge*" near/20 "Game Day" | 207 | All | 4,048 | All | Parties will confer |
| 94, 95 | "Judge*" near/20 "Grand Prix" or "GP" | 50,163 | Sampling | 9,874 | Sampling | Parties will confer |
| 96, 97 | "Judge*" near/20 "Star City" or "SCG" | 783 | Sampling | 445 | Sampling | Parties will confer |
| 98 | "Judge*" near/20 "Channel Fireball" | 228 | Sampling | 377 | Sampling | Parties will confer |
| 99 | "Judge*" near/20 "Pastimes" | 340 | Sampling | 245 | Sampling | Parties will confer |
| 100 | "Judge*" near/20 "Cascade" | 447 | Sampling | 7 | Sampling | Parties will confer |
| 101 | "Judge*" near/20 "Professional Event Services" or "Premier Event Services" | 12 | All | 44 | All | Parties will confer |
| 103,104, and 105 | "Star City" near/20 "contract*"or "agree*" or "require*" | 147 | All | 100 | All | Parties will confer |

| 106, 107 and 108 | "Channel Fireball" near/20 "contract*" or "agree*" or "require*" | 160 | All | 258 | All | Parties will confer |
|---|---|---|---|---|---|---|
| 109, 110, and 112 | "Pastimes" near/20 "contract*" or "agree*" or "require*" | 710 | Sampling | 220 | Sampling | Parties will confer |
| 112 | "Cascade" near/20 "contract*" or "agree" or "require" | 907 | Sampling | 288 | Sampling | Parties will confer |
| 115 | "Professional Event Services" near/20 "contract*" or "agree*" or "require*" | 665 | Sampling | 33 | Sampling | Parties will confer |
| 118 | "Premier Event Services" near/20 "contract*" | (See above) | Sampling | 0 | Sampling | Parties will confer |
| 119 | "Premier Event Services" near/20 "agree*" | (See above) | Sampling | 0 | Sampling | Parties will confer |
| 120 | "Premier Event Services" near/20 "require*" | (See above) | Sampling | 3 | Sampling | Parties will confer |
| 121 | "Professional Event" near/20 "require*" | (See above) | Sampling | 33 | All | Parties will confer |
| 122 | "Professional Event" near/20 "agree*" | (See above) | Sampling | 10 | All | Parties will confer |
| 123 | "Star City" near/20 "foil*" | 105 | All | 37 | All | Parties will confer |
| 124 | "Star City" near/20 "box*" | (See above) | All | 29 | All | Parties will confer |
| 125 | "Star City" near/20 "booster*" | (See above) | All | 51 | All | Parties will confer |
| 126 | "Star City" near/20 "prize*" | (See above) | All | 12 | All | Parties will confer |
| 127 | "Channel Fireball" near/20 "foil*" | 94 | All | 51 | All | Parties will confer |
| 128 | "Channel Fireball" near/20 "box*" | (See above) | All | 19 | All | Parties will confer |
| 129 | "Channel Fireball" near/20 "booster*" | (See above) | All | 35 | All | Parties will confer |
| 130 | "Channel Fireball" near/20 "prize*" | (See above) | All | 37 | All | Parties will confer |
| 131 | "Pastimes" near/20 "foil*" | 437 | All | 160 | All | Parties will confer |
| 132 | "Pastimes" near/20 "box*" | (See above) | All | 118 | All | Parties will confer |
| 133 | "Pastimes" near/20 "booster*" | (See above) | All | 317 | All | Parties will confer |

| 134 | "Pastimes" near/20 "prize*" | (See above) | All | 23 | All | Parties will confer |
|---|---|---|---|---|---|---|
| 135 | "Cascade" near/20 "foil*" | 428 | All | 20 | All | Parties will confer |
| 136 | "Cascade" near/20 "box*" | (See above) | All | 22 | All | Parties will confer |
| 137 | "Cascade" near/20 "booster*" | (See above) | All | 101 | All | Parties will confer |
| 138 | "Cascade" near/20 "prize*" | (See above) | All | 0 | All | Parties will confer |
| 139 - 146 | "Professional Event Services" near/20 "foil*" or "booster*" or "box*" "prize*" | 10 | All | 74 | All | Parties will confer |
| 147, 148, and 149 | "Judge*" near/20 "Andy Heckt" or "Andrew Heckt" or Heckt | 7,687 | Sampling | 34 | All | Parties will confer |
| 150-155 | "tournament organize*" or "TO" NEAR/20 "Andy Heckt" or "Andrew Heckt" or "Heckt" | 5 | All | 289 | All | Parties will confer |
| 156, 157 | "Judge*" NEAR/20 "John Carter" or "Carter" | 710 | Sampling | 274 | Sampling | Parties will confer |
| 158-161 | "tournament organize*" or "TO" NEAR/20 "John Carter" or "Carter" | 251 | Sampling | 1180 | Sampling | Parties will confer |
| 162-163 | "Judge*" NEAR/20 "Helene Bergeot" or "Bergeot" | 8,057 | Sampling | 7,617 | Sampling | Parties will confer |
| 164, 165 | "Judge*" NEAR/20 "Aaron Hamer" or "Hamer" | 842 | All | 501 | All | Parties will confer |
| 166 – 168 | "Judge*" NEAR/20 "Sara Smith" or "Sara Mox" or Mox | 13,609 | Sampling | 1822 | Sampling | Parties will confer |
| 169-170 | "Judge*" NEAR/20 "Scott Larabee" or Larabee | 4,638 | Sampling | 3255 | Sampling | Parties will confer |
| 171-172 | "Judge*" NEAR/20 "Laura Kilgore" or "Kilgore" | 1,821 | Sampling | 9214 | Sampling | Parties will confer |
| 173 | "Judge*" NEAR/20 "Ron Foster" | 6,421 | Sampling | 304 | Sampling | Parties will confer |
| 174 | "Judge*" NEAR/20 "Justin Turner" | 1,322 | Sampling | 37 | Sampling | Parties will confer |
| 175 | "Judge*" NEAR/20 | 24,241 | Sampling | 6 | Sampling | Parties will |

|  | "Adam Shaw" |  |  |  |  | confer |
|---|---|---|---|---|---|---|
| 176 | "Judge*" NEAR/20 "Joshua Stansfield" | 143 | All | 74 | All | Parties will confer |
| 177 | "Judge*" NEAR/20 "Peter Golightly" | 138 | All | 76 | All | Parties will confer |
| 178 | "Judge*" NEAR/20 "lawsuit" | 300 | All | 733 | All | Parties will confer |
| 179 | "Judge*" NEAR/20 "complain*" | 1,055 | All | 1,341 | All | Parties will confer |
| 180 | "Judge*" NEAR/20 "charg*" | 1,224 | Sampling | 6 | Sampling | Parties will confer |
| 181-182 | "Judge*" NEAR/20 "FLSA" or "Fair Labor Standards Act" | 72 | All | 13 | All | Parties will confer |
| 183-184 | "Judge*" NEAR/20 "DOL" | 839 | All | 13 | All | Parties will confer |
| 185-187 | "Judge*" NEAR/20 "DLSE" or "Department of Labor Standards Enforcement" or "Labor Commissioner" | 341 | All | 29 | All | Parties will confer |
| 188 -189 | "Judge*" NEAR/20 "IRS" "Internal Revenue Service" | 11,309 | Sampling | 311 | Sampling | Parties will confer |
| 190 -191 | "Shaw" NEAR/20 "Wizards of the Coast" or "WoTC" | 13,130 | Sampling | 1274 | Sampling | Parties will confer |
| 192 | "Judge*" near/20 "independent contractor*" | 2,124 | Sampling | 1,476 | Sampling | Parties will confer |