UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAM SHAW, et al., <br>     Plaintiffs, <br> v. <br> WIZARDS OF THE COAST, LLC, <br>     Defendant. | Case No. 5:16-cv-01924-EJD <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION; SETTING CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. No. 46 |

## I. INTRODUCTION

This is an unconventional wage and hour suit brought by Plaintiffs Adam Shaw, Justin Turner, Peter Golightly and Joshua Stansfield, one hundred twenty-six opt-in plaintiffs and the putative class ("Plaintiffs") against Defendant Wizards of the Coast, LLC ("Defendant"), to recover unpaid minimum wages and overtime compensation to which they contend they are entitled because they performed "work" for the benefit of Defendant. Plaintiffs contend that Defendant has a policy of treating Plaintiffs and other similarly situated putative class members as volunteers instead of employees and refusing to pay them for their "work." Presently before the Court is Plaintiffs' motion for an order (1) conditionally certifying the case as a collective action on behalf of all individuals who participated as "Magic: the Gathering" judges at events sanctioned by Defendant from April 12, 2013, through the resolution of this case; (2) authorizing the parties to send notices pursuant to 28 U.S.C. Section 216(b) to all potential opt-in plaintiffs informing them that they may join this action and assert claims under the Fair Labor Standards

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
1

Act, 29 U.S.C. Section 206; (3) approving Plaintiffs' proposed Notice of Collective Action Lawsuit and Consent to Join forms; (4) directing Defendant to produce a putative class action member list with contact information; and (5) approving the designation of Kurtzman Carson Consultants as the Class Administrator. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the motion for conditional certification is denied.

## II. BACKGROUND[1]

Defendant sells products relating to a fantasy collectible card game called "Magic: the Gathering" ("Magic"). First Amended Complaint ("FAC"), ¶12. Defendant organizes, promotes, sponsors and administers an extensive and highly regulated system of "Events" for its customers. Id. at ¶13. The Events are "created, controlled and regulated by Defendant" through its network of certified "Judges." Id. Events are used as a marketing tool to keep customers active in playing Magic and to give Defendant a means to sell magic products. Id. Plaintiffs are certified Judges.

The activities necessary to conduct Defendant's Events are carried out by Judges. Id. at ¶14. Judges certified by Defendant are "obligated to abide by Defendant's policies and procedures." Id. Defendant "require[s] Judges to perform labor necessary for [Defendant's] Events to function," to "routinely fulfill duties and responsibilities including administration and oversight of Magic gameplay," and to "evaluate and train other Judges." Id. Defendant maintains and administers its nationwide network of Judges through a progressive system of "Levels" from one to five. Id. Each level has increasingly higher prerequisites, job duties, scheduling and work requirements.

Becoming a Judge "requires" registering with Defendant, going through training and testing, and documenting Magic game-play at Events. Id. at ¶15. Acquiring and maintaining certification as a Judge "requires" approximately "twenty-five hours per month per Judge level." Id. Judges "are expected to read and stay apprised of extensive announcements, directives,

---

[1] The Background is a summary of the allegations in the complaint. All well-pleaded facts are accepted as true for purposes of the present motion.

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
2

instructions, rulings, and discussions disseminated" by Defendant, to provide their contact information to Defendant, to create reports, to renew their certifications with regular testing, to recruit and train other Judges, to provide detailed evaluations of other Judges, and to administer Defendant's policies and procedures on Defendant's behalf. Id.

Outside of Events, Defendant "uses" Judges as representatives to retailers and players. Id. at ¶16. Judges "are expected" to provide customer service, instruction and support to retailers and players, and to investigate and submit reports regarding retailers' and players' compliance with Defendant's policies. Id. Defendant maintains a list of the Judges' contact information, certifications and activities. Id. Failure of a Judge to comply with Defendant's policies "is considered a breach of the Judge's certification that can and does result in disciplinary or other punitive measures against the offending Judge." Id.

Plaintiffs allege that the work performed by Judges for the benefit of Defendant "is performed under close supervision and control by [Defendant] that creates an employer-employee relationship which obligates Defendant to pay Plaintiffs and similarly situated Judges wages" in accordance with the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. ("FLSA") and the California Labor Code. Id. at ¶17. Based on the foregoing, Plaintiffs assert ten separate causes of action: (1) failure to pay minimum wages and overtime wages for work performed at Magic Events in violation of the FLSA; (2) failure to pay minimum wages in violation of California Labor Code ("CLC") §§204, 1182.12, 1194, 1197 and applicable IWC Wage Orders; (3) failure to pay overtime wages for work performed at Magic Events in violation of CLC §§204, 510, 1194, 1198 and applicable IWC Wage Orders; (4) failure to provide meal periods in violation of CLC §§226.7, 512 and applicable IWC Wage Orders; (5) failure to provide rest periods in violation of CLC §226.7 and applicable IWC Wage Orders; (6) failure to reimburse for business expenses incurred during two to three-day tournaments in violation of CLC §2802; (7) late payment of wages in violation of CLC §204; (8) failure to furnish timely and accurate itemized wage statements in violation of CLC §§226 and 226.3; (9) unfair business practices in violation of California Bus. & Prof. Code §17200 *et seq*.; and (10) penalties pursuant to CLC§2699 *et seq*.

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
3

## III. STANDARDS

The FLSA permits an employee to bring suit against his employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. §216(b); see also Leuthold v. Destination America, Inc., 224 F.R.D. 462 (N.D. Cal. 2004). Determining whether a collective FLSA action is appropriate is within the discretion of the district court. See Rivera v. Saul Chevrolet, Inc., No. 16-5966 LHK, 2017 WL 3267540, at *2 (N.D. Cal. July 31, 2017). To certify a FLSA collective action, the court "must evaluate whether the proposed lead plaintiffs and the proposed collective action group are 'similarly situated' for purposes of §216(b)." Leuthold, 224 F.R.D. at 466. The term "similarly situated" is not defined in the FLSA, nor has the Ninth Circuit provided a definition. Id. at 467. A majority of courts apply a two-step approach to determine whether plaintiffs are "similarly situated." See e.g. Leuthold, 224 F.R.D. at 466 (collecting cases); Rivera, 2017 WL 3267540, at *3 n. 1 (collecting cases).

Under the two-step approach, the court first considers the pleadings and affidavits submitted by the parties to determine whether potential opt-in plaintiffs exist who are similarly situated to the representative plaintiffs, and thus whether a collective action should be certified for purposes of sending notice of the action to potential opt-in plaintiffs. Rivera, 2017 WL 3267540, at *3. At this stage, a court typically "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); see also Stanfield v. First NLC Fin. Serv., LLC, No. 06-3892 SBA, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006) (plaintiffs "must be generally comparable to those they seek to represent"). The standard for certification at this first stage is "fairly lenient" and the usual result is conditional class certification. Adams v. Inter-Con Security Systems, Inc., 242 F.R.D. 530, 536 (N.D. Cal. 2007). Despite the "fairly lenient" standard, unsupported allegations of FLSA violations are not sufficient to meet the plaintiffs' burden at the first stage. Shaia v. Harvest Management Sub LLC, 306 F.R.D. 268, 272 (N.D. Cal. 2015); Velasquez v. HSBC Finance Corp, 266 F.R.D. 424, 427 (N.D. Cal. 2010). If conditional certification is granted, the second stage occurs after discovery is completed and the

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
4

case is ready to be tried.  Id.  "[T]he Court then determines the propriety and scope of the collective action using a stricter standard."  Stanfield, 2006 WL 3190527 at *2.

## IV.  DISCUSSION

Plaintiffs seek an order conditionally certifying the case as a collective action on behalf of all individuals who participated as "Magic:  the Gathering" Judges at Events sanctioned by Defendant from April 12, 2013, through the resolution of this case.  Plaintiffs contend that all of the Judges are the victims of Defendant's policy of treating Judges as volunteers and not employees.  Plaintiffs assert that they should be regarded as Defendant's employees because the Judge program is coordinated and administered by Defendant, Judges are Defendant's representatives to players, tournament operators and others, and Judges perform labor without which Defendant could not operate Magic Events-the driving force behind sales.  Motion at p. 20.  Plaintiffs emphasize that Judges are highly regulated by Defendant in that they are all subject to the same rigorous training and certification requirements, share similar job duties and responsibilities, wear the same Judge's uniform at Magic Events, are subject to common policies regarding discipline and termination, are required to abide by the same code of conduct, and are under Defendant's "control even when not working."  Id.  Plaintiffs contend that Defendant's decision to treat Judges as volunteers instead of employees gives rise to FLSA violations for all Plaintiffs and putative class members.  See  e.g. Reab v. Elec. Arts, Inc., 214 F.R.D. 623, 628 (D. Colo. 2002) (granting conditional certification based on allegation that class of unpaid "counselors" who performed customer service-oriented duties relating to defendants' on-line fantasy role-playing game were employees, as opposed to volunteers, who were entitled to minimum wage and overtime under the FLSA); Hallissey v. Am. Online, Inc., No. 99-3785 KTD, 2008 WL 465112, at *2 (S.D. N.Y. 2008) (granting conditional certification based on allegation that class of "community leader" participants were denied minimum and overtime wages because of their classification by defendant as volunteers).  In support of the motion for conditional certification, Plaintiffs have submitted six declarations describing their experiences as Judges.

Defendant opposes conditional certification, arguing that Plaintiffs' motion is predicated

Case No.:  5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
5

on the erroneous and unfounded presumption that Defendant has a policy of classifying Judges as volunteers. Defendant's Opposition at 16:2-4. Defendant denies having any policy classifying Judges as volunteers and refusing to pay them. Defendant explains the Judges participate in Events under a number of unique employment and/or independent contractor arrangements with varying compensation practices that are all outside of the direct control of Defendant. Id. 2:27-3:2. Defendant further asserts that Plaintiffs have failed to carry their burden of demonstrating that they and the putative class were the victims of a single decision, policy or plan that violates the FLSA.

Having reviewed the allegations and evidence submitted by both sides, the Court finds that Plaintiffs have failed to carry their burden of demonstrating that they and the putative class were the victims of a single decision, policy or plan. At its core, Plaintiffs' allegation is that Defendant has a policy of treating Judges as volunteers, not employees, and refusing to pay Judges wages. The present case, however, is distinguishable from the two volunteer cases relied upon by Plaintiffs. In Reab, the defendant's Terms of Service Agreement clearly stated that the Counselor program in which the plaintiffs were participating was "a volunteer service organization." Reab v. Elec. Arts, Inc., 214 F.R.D. at 626. Here, there is no comparable agreement reflecting a single decision, policy or plan by Defendant to treat Judges as volunteers and to refuse to pay Judges compensation. In Hallissey, the alleged employer, defendant America Online, Inc. contended that plaintiffs who participated in the company's community leader program were classified as volunteers, and therefore not entitled to any compensation. Hallissey v. Am. Online, Inc., No. 99-3785 KTD, 2008 WL 465112, at *2 (S.D. N.Y. 2008). In the present case, Defendant has not taken the position that Judges are volunteers. Defendant's Opposition at 16:4. Instead, Defendant asserts that Judges participate in Events under a number of unique employment and/or independent contractor arrangements. Defendant's uncontroverted evidence fully supports Defendant's assertion.

Defendant explains that it "sanctions" various types of Events where Magic players can gather together for organized game playing. Decl. of Paul Bazakas In Support of Opposition, ¶6

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
6

(Dkt. No. 52-4). Sanctioned Events are held throughout the United States and internationally in stores, convention centers and other public venues. Id. For an Event to be considered sanctioned, a qualified store or tournament organizer selects a game format, registers the Event through the Defendant's Wizards Play Network ("WPN"), announces the event ahead of time, complies with the Magic Tournament Rules available on the WPN, and reports the results of the Event to Defendant. Decl. of Hélène Bergeot In Support of Opposition, ¶15 (Dkt. No. 52-9). The WPN Terms and Conditions provide in pertinent part that stores agree to maintain exclusive responsibility for in-store staff and individuals who assist in running Events. Bazakas Decl. at ¶15.

In addition to store-based events, there are tournaments. Since October of 2011, Defendant has contracted with a number of tournament organizers to run sanctioned Events. Bergeot Decl. at ¶18. The Tournament organizers are "solely responsible for staffing decisions related to individuals they engage and/or hire to assist in running the sanctioned Magic event." Bazakas Decl. at ¶16. Tournament organizers vary in how they manage, staff and run the Events, including how they engage Judges. Bergeot Decl. at ¶18. As one example, there is a third-party website commonly referred to as "Judge Apps" that tournament organizers use to publish an upcoming Event and to post details including compensation and/or travel expenses they are offering to prospective Judges. Id. at ¶28. The prospective Judges can use the Judge Apps to contact the tournament organization and express their interest in judging an Event. Id.

The vast majority of sanctioned Events (98%) do not require a Judge; Judges are required only for "premiere" events. Bazakas Decl., ¶¶16, 22. Nevertheless, stores and tournament organizers may use a Judge at their own discretion. Bergeot Decl. at ¶21. Defendant's involvement in sanctioned Events is generally limited to providing promotional items and/or prizes to be used and distributed by the store or tournament organizers hosting the Events. Bergeot Decl. at ¶20. "[I]t is the store or tournament organizer that determines, among other things, whether to run an [E]vent, the date and location of the Event, staffing for the Event, the number of entrants permitted, the length of the [E]vent including any breaks in game play, and

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
7

whether to charge players an entry fee, and if so, the price." Id.

Defendant acknowledges that it requires stores and tournament organizer to use Judges for "specific sanctioned competitive level REL Magic [E]vents." Id. at ¶22. For this type of tournament, the store or tournament organizer is responsible for selecting and engaging the Judge(s), and complying with applicable laws with respect to the Event. Id. at ¶23. Head Judges for the competitive level "Grand Prix" sanctioned Event, however, are selected and engaged by Defendant. Id. For all of the Grant Prix Events held between October 29, 2011 and December 31, 2016, Defendant entered into written independent contractor agreements and financially compensated the head Judges that it selected. For Grand Prix events held on or after January 1, 2017, the tournament organizer "is responsible for the selection and all other aspects pertaining to the Judges it may utilize for the event." Id. at ¶25.

Defendant organizes and runs only three tournaments: the Magic Pro Tour, the World Magic Cup and the Magic World Championship. Bergeot Decl., ¶19. Defendant runs all aspects of these three tournaments, including among other things, engaging individuals as Judges. Id. Defendant enters into written independent contractor agreements and financially compensates Judges for these three events directly. Id. In sum, there are substantial variations in how sanctioned Events are organized, managed, and run, including the selection and utilization of Judges and the compensation they are provided.

Plaintiffs' declarations, which are fairly characterized by Defendant as "cookie-cutter declarations," provide many interesting details about the important role Judges play in Defendant's elaborate Magic card game enterprise, including Plaintiffs' experiences as Judges, information about the Judge certification process, Defendant's expectations for Judges, and judging activities Plaintiffs characterize as "work." Defendant objects to nearly every statement in the declarations, asserting that each statement lacks foundation, constitutes improper opinion testimony by a lay witness, is not based upon personal knowledge, constitutes hearsay, and/or violates the best evidence rule. Many of Defendant's objections are well taken. Nevertheless, the Court has considered the substance of the declarations, which supports Plaintiffs' assertion that

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
8

Defendant viewed Judges as "volunteers." Specifically, Defendant's Judge Code states that "Membership of the Judge Program is voluntary or 'at will' from both sides – a judge can withdraw from the Judge Program at any time, and the Judge Program can choose to suspend a judge, change a judge's certification level, or even decertify a judge altogether based on their conduct." Dkt. No. 46-7, Ex. B., p. 1. Defendant's publication entitled "What does it mean to be a certified judge," similarly states that being a Judge "is volunteer work" and a "volunteer activity." Id., Ex. B, p. 2.

More importantly, however, with regard to the engagement and compensation of Judges, Plaintiffs' declarations do not contradict Defendant's evidence in any material respect and fail to set forth facts establishing that Plaintiffs were the victim of a single decision, policy or plan to refuse to compensate Judges for sanctioned Events. The declarations are filled with conclusory statements and generalities that are unsupported by facts. Plaintiff Adam Shaw ("Shaw") states that he "worked" as a Judge at approximately seven (7) Magic Events during which he performed numerous "duties" for the benefit of Defendant and was not paid wages. Shaw Decl. at ¶¶7, 11, 22. There are no facts explaining how any single decision, policy or plan implemented by Defendant required him (or any other putative class member) to become a certified Judge or to attend any given sanctioned Event, much less facts explaining how a single decision, policy or plan implemented by Defendant required or obligated him to perform "work" or "duties" at a sanctioned Event without getting paid wages or other compensation. Plaintiff Shaw states that he served as a head Judge for at least three sanctioned Events, and in that capacity, received instructions directly from Defendant and implemented Defendant's scheduling and hiring decisions among the Judges in his group. Id. at ¶12. Again, Plaintiff Shaw fails to provide facts to establish that a single decision, policy or plan implemented by Defendant required or obligated him (or other putative class members) to attend these three sanctioned Events and to serve as a head Judge without getting paid wages or other compensation. The other Plaintiffs' declarations are similarly deficient.

Moreover, two of the named Plaintiffs, Shaw and Justin Turner ("Turner"), admitted

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
9

during deposition that they had been compensated by Defendant for judging Events. See Turner Depo. at 123:12-125:21, 126:5-23, 133:10-22; Shaw Depo. at 222:16‐0225:17 (Dkt. No. 52-3). Plaintiff Turner also confirmed that Defendant compensated him for travel and hotel expenses on at least one occasion. Turner Depo. at 133:23-134:17.[2] A third named Plaintiff, Joshua Stanfield, states in his declaration that he has "never been paid regular or overtime wages" for the time he spent judging sanctioned Events. Decl. of Joshua Stanfield, ¶22 (Dkt. No. 46-4). Although Stanfield may not have received "wages," Defendant's records show that he entered into three separate independent contractor agreements with Defendant for judging Events and received monetary compensation for the services he provided. Bazakas Decl. at ¶24. That Plaintiffs Shaw, Turner and Stanfield were financially compensated directly by Defendant undermines their assertion that Defendant maintained a common policy requiring Judges to perform "work" at sanctioned Events without getting paid wages or other compensation.

In the absence of evidence of a single decision, policy or plan governing the engagement and compensation of Judges at sanctioned Events, adjudication of Plaintiffs' claims would require an individualized Plaintiff-by-Plaintiff analysis of the specific circumstances under which each Plaintiff "worked" as a Judge at every one of the over one million sanctioned events that were conducted by stores, tournament organizers and/or Defendant throughout the United States. Under these circumstances, it would not serve judicial economy to adjudicate the potential claims of a nation-wide putative class consisting of approximately 3,850 Judges in a single action.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification is DENIED. A case management conference is scheduled for January 25, 2018 at 10:00 a.m.  The parties shall

---

[2] Separate and apart from the compensation provided by Defendant, Turner confirmed that he had received some form of compensation from stores and at least one tournament organizer. Turner Depo. at 66:17-24 and 69:10-25.  Shaw similarly testified that a tournament organizer paid for his flight on one occasion.  Turner' and Shaw's testimony is consistent with Defendant's assertion that tournament organizers made their own arrangements with Judges to staff sanctioned Events without Defendant's involvement.

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
10

file an updated joint case management conference statement no later than January 15, 2018.

**IT IS SO ORDERED.**

Dated: January 3, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-01924-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
11